CASE v. HARRAH.

1. WOODS AND FORESTS—STANDING TIMBER.
   Standing timber is real estate.

2. LOGS AND LOGGING—CONTRACTS—LAW OF CASE.
   Contract for sale of all timber on certain land, *held*, to fix rule of action for parties thereto and law of case.

3. SAME—RIGHT TO CUT BEFORE PAYMENT.
   Contract for sale of all timber standing, lying, and being on certain described lands, with right to remove timber "so cut" on payment of agreed price per thousand feet, is construed to permit buyer to cut timber before paying therefor.

4. WOODS AND FORESTS—LOGS AND LOGGING.
   Timber cut from land is personal property.

5. LOGS AND LOGGING—CONTRACTS—CONSTRUCTION—CUT TIMBER—SECURITY—TAXES.
   Where contract for sale of timber provided that it should not be removed until paid for, that all timber not released should be security for purchase price, and that buyer would pay taxes on land until timber was removed, cut timber was included in security, and buyer was liable for taxes on land where timber was cut but not paid for or released.

Appeal from Alger; Runnels (Herbert W.), J. Submitted January 13, 1931. (Docket No. 102, Calendar No. 35,321.) Decided February 27, 1931.

Bill by Fred S. Case, receiver for Richard W. Nebel and Thomas G. Sullivan, against Charles W. Harrah and others for an accounting under a timber cutting contract. Decree for plaintiff. Defendants appeal. Affirmed.

*McDonald & Kaltz* (*Glenn W. Jackson*, of counsel), for plaintiff.

*Welsh, Bebout, Hill & Lee,* for defendants.

POTTER, J. Plaintiff files his bill herein as receiver against defendant for an accounting, to compel a refund of money paid for taxes, to cut off by foreclosure and sale defendants' rights in the timber in question, and for other relief. From a decree for plaintiff, defendants appeal. Defendant Harrah entered into a written contract with Thomas G. Sullivan as follows:

"This agreement made this fourteenth day of August, nineteen hundred twenty, between Thomas G. Sullivan, a widower of Munising, Michigan, and Charles W. Harrah, of Detroit, Michigan.

"Witnesseth: The said Sullivan hereby agrees to sell and convey to the said Harrah all of the timber standing, lying and being on the following described lands, situated in Alger and Schoolcraft counties in the State of Michigan, and more fully described as follows:

"In town 47 north, range 13 west; the west half of section 3; the east half and the northwest quarter of section 4; the northwest quarter of section 5; the northeast quarter of section 6; the east half of section 9; and the west half of section 10; being in Schoolcraft county.

"In town 48 north, range 13 west; the northeast quarter of northwest quarter of section 29; the southeast quarter of section 31; the southwest quarter of section 32; and the south half of section 33.

"In town 48 north, range 14 west; the west half of the west half of section 27; the northeast quarter of the northeast quarter, and southeast quarter, the north half of the southwest quarter, and the southeast quarter of the southwest quarter of section 28, the west half of the southwest quarter and the north half of section 33; the west half of the northwest quarter of section 34; the southeast quarter of the northwest quarter of section 36.

"In town 48 north, range 15 west; the east half, the southwest quarter, and the west half of the northwest quarter of section 36, being in Alger county.

"Containing in all three thousand nine hundred fifteen and 35-100 acres, more or less, according to Government survey, for the sum of ($1) dollar and other valuable consideration, to be paid as follows:

"Five thousand ($5,000) dollars on delivery of this contract; twenty thousand ($20,000) dollars on or before thirty (30) days from the date hereof; a note for twenty thousand ($20,000) dollars payable on or before one year from date hereof and a note for the balance of nineteen thousand four hundred forty-four ($19,444) dollars payable on or before two years from date hereof, with interest at six per cent. (6%) per annum.

"It is understood that the said Harrah has the right for twenty years (20) from date hereof, to remove said timber from said lands and said Harrah agrees to pay all taxes that may be assessed against said lands and timber. At any time that the said Harrah notifies the said Sullivan that he has removed the timber from any descriptions or description by registered letter, he no further has to pay the taxes on the descriptions that he has notified said Sullivan of and has no further rights to any

timber that might be on said lands that are so reported to said Sullivan. The said Sullivan guarantees that the title to this property is perfect and that there are no unpaid taxes thereon. It is understood that the said Harrah shall be allowed to cut the said timber by paying to the said Sullivan the sum of ten ($10) dollars for each thousand feet board measure so cut and before removal of any of the timber from said lands and the said money so paid shall be applied hereon.

"In case of failure on the part of the said Harrah to carry out his part of this contract, the five thousand ($5,000) dollars paid to bind this bargain, shall be forfeited to the said Sullivan. All timber not so released as stated herein shall be held as collateral security to the note above mentioned.

"This agreement shall bind the heirs, executors and assigns of both parties hereto.

"(Signed)    THOMAS G. SULLIVAN.
"(Signed)    CHARLES W. HARRAH."

This contract was recorded in the office of the register of deeds of Alger county.

Prior to making this contract Sullivan procured some money from Richard W. Nebel under circumstances discussed in *Nebel* v. *Sullivan*, 245 Mich. 642. Nebel brought suit against Sullivan to recover his share of the profits resulting from Sullivan's sale of the timber to Harrah. Defendant Harrah filed an answer in the nature of a cross-bill seeking to rescind the contract on account of Sullivan's alleged fraud. By the decree in that case plaintiff was appointed receiver to collect and enforce, by suit or otherwise, the amount due on the contract, to receive the balance due from Harrah to Nebel and Sullivan upon the purchase price of the timber sold to him, and for other purposes.

Plaintiff was compelled to pay taxes on the lands involved to prevent losing them on tax sale. The

amount paid is not in dispute. Defendants contend the standing timber was real estate; the contract constituted a sale with an attempted reservation of a lien which should have been foreclosed as a mortgage; the notes of Harrah were, under the contract, payment, and not promises to pay; the statute of limitations had run against plaintiff's right of action on any of the notes; the payment of taxes gave the payer thereof no lien on the timber therefor; the decree in *Nebel* v. *Sullivan* above referred to did not hold the defendant Harrah liable for any amount under the contract above quoted; plaintiff has a complete and adequate remedy at law and defendants could not be sued in chancery in Chippewa county.

Standing timber is real estate. Defendant Harrah entered into a contract in writing which has been held valid. This contract fixes the rule of action for the parties thereto and the law of the case. Sullivan agreed to sell and convey to Harrah all the timber standing, lying and being on certain lands containing 3,915.35 acres more or less. The consideration was to be paid, $5,000 on delivery of the contract; $20,000 in 30 days from date; a note of $20,000 payable on or before one year from date, and a note for $19,444 payable on or before two years from date. Harrah was given the right for 20 years to remove the timber from the lands described in the contract. He was to pay the taxes assessed against the lands and timber. Whenever timber was removed from a particular description, Harrah was to notify Sullivan of its removal and was not thereafter to be liable for taxes thereon, and was to have no further rights in the lands or timber on the particular description released.

The contract contained a clause:

."It is understood that the said Harrah shall be allowed to cut the said timber by paying to the said Sullivan the sum of ten ($10) dollars for each thousand feet board measure so cut and before removal of any of the timber from said lands and the said money so paid shall be applied hereon."

The contract also contained a clause:

"All timber not so released as stated herein shall be held as collateral security to the note above mentioned."

The standing timber on the land in question was at all times security for the performance by defendant Harrah of the contract. He had a right to cut and remove the timber from the land on paying $10 for each thousand feet board measure *so cut,* and before the removal of any of the timber from the lands. A fair construction of the contract which covered timber "standing, lying and being" on the lands in question is that defendant Harrah could cut timber therefrom before paying therefor. The contract provides the measurement of the timber so cut is to be by board measure. The rate of payment is fixed at $10 for each thousand feet board measure *so cut.* If cut, the timber was personal property. It would be no longer real estate. The contract provides that even if so cut the timber cannot be removed from said lands until paid for. It still constitutes security to the vendor for the payment of the purchase price and this is consistent with the purpose of the contract. We find no error in the decree of the trial court, which is affirmed, with costs.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, SHARPE, and NORTH, JJ., concurred. FEAD, J., did not sit.