MAWSON-PETERSON LUMBER CO., a Corporation, Plaintiff and Respondent,

v.

GOLIE B. SPRINKLE, Defendant and Appellant. MONTGOMERY WARD & CO., Cross-Petitioner and Respondent.

(No. 2249; Aug. 10, 1943; 140 Pac. 2d 588)

336

For defendant and appellant, there was a brief and oral argument by Carleton A. Lathrop of Cheyenne, Wyoming.

For plaintiff and respondent, there was a brief by Allen A. Pearson of Cheyenne, Wyoming.

For cross-petitioner and respondent, there was a brief and oral argument by Harry B. Henderson, Jr., of Cheyenne, Wyoming.

## OPINION

BLUME, Justice.

This is an action brought by the Mawson-Peterson Lumber Company against Golie B. Sprinkle, defendant, to foreclose a mechanics' lien on Lots 6, 7, and 8 of Block 10, Kelley's Addition to the City of Cheyenne, Wyoming. Montgomery Ward & Company intervened in the action as cross-petitioner and sought to foreclose a mechanics' lien against the same defendant, Golie B. Sprinkle, filed on Lot 6 above mentioned. The Court entered a decree foreclosing these liens both in favor of the plaintiff respondent company as well as the cross-petitioner. From that decree, the defendant Sprinkle has appealed.

I. It is necessary to consider separately the controversy with the lumber company and Montgomery Ward & Company, respectively, and we shall proceed and

first consider the controversy with respect to the claim of the lumber company above mentioned.

(1) The contention is made by the defendant that the lumber company, by agreement between the parties, waived the filing of a mechanics' lien and agreed to rely upon the proceeds of a loan which Sprinkle was to obtain from the Federal Housing Administration. It appears that Sprinkle applied for a loan on August 25, 1938 in the sum of $3200. Subsequently, during 1939, it appears that the Federal Housing Administration agreed to allow the loan to the extent of $1900. That was not sufficient to pay for all of the claims in connection with the construction of Sprinkle's house, so he proceeded on October 17, 1939 to file a voluntary petition in bankruptcy and he was thereafter, about October 20, 1939, adjudged to be a bankrupt. After the filing of the petition in bankruptcy the Federal Housing Administration informed the defendant that on account of such bankruptcy it would not make any loan.

The defendant Sprinkle did not testify that the lumber company agreed to waive the filing of a mechanics' lien. All he stated was that he told Mr. Singer, the manager of the plaintiff lumber company, "I says to Mr. Singer, your money comes from this loan and I would suggest you call them up and see what they tell you." Defendant, however, relies upon the testimony of Mr. Singer himself which is as follows:

Q. "Did you or the plaintiff company apply for the loan?"
A. "No. Mr. Sprinkle applied for the loan."
Q. "What was the idea as to the loan?"
A. "To secure money to pay for the materials."
Q. "Now, was there any agreement at that time that you would look exclusively to the proceeds of the loan for your payment?"
A. "Yes."

Q. "You did not expect to be paid unless the loan was made?"
(Question objected to and objection sustained.)
Q. "What was the agreement as to the loan between you and Mr. Sprinkle?"
A. "That we was to help him secure a loan, and that the loan money was to pay for the materials furnished by us."
Q. "Did you know at that time whether a loan could be obtained?"
A. "No, I did not."

It is stated in 40 C. J. 313 that "what constitutes a waiver is essentially a question of intention; in order to establish it the intention to waive must clearly appear. * * * In the absence of language indicating a purpose under no circumstances to claim a lien it is not to be supposed that the contractor intended absolutely to relinquish his right." It may be noted that no mention whatever was made, either on the part of the defendant or on the part of Mr. Singer, in regard to the waiver of a lien. At that time it was not known, as testified by Mr. Singer, whether or not the loan would be obtained, and he probably meant by his answer to one of the questions that the proceeds of the loan should be exclusively used for the purpose of paying for the materials to be furnished to the defendant. Not a single reason is indicated in the record why the lumber company should have waived the filing of a mechanics' lien. If there had been any such agreement, the defendant could have testified to that effect, but he did not do so; he makes no claim in his testimony that any such waiver was made. We think that the one answer of Mr. Singer's was the result of a misunderstanding in the record as a whole and is far from showing clearly that the lien was waived. If, moreover, the contrary could be said to be true, the defendant lost his right to rely thereon. If it was an agreement, it was an executory one. Defendant became a voluntary bankrupt. He

testified that the Federal Housing Administration refused to make any loan to him thereafter. He accordingly placed it out of his power to do what any agreement with the lumber company contemplated. It is stated in 17 C. J. S. 912 that "where one party places it out of his power to perform the other party may treat the contract as terminated at once." That the lumber company did not consider any such contract in force after the proceedings in bankruptcy is shown by the fact that soon thereafter it filed its statement of a mechanics' lien as required by the statute. See also Pacific Lumber & Timber Co., 60 Wash. 566; 111 P. 869.

(2) The plaintiff lumber company filed its lien on Lots 6, 7, and 8 of Block 10, Kelley's Addition on October 25, 1939. At that time, Kelley's Addition was not a part of the City of Cheyenne but was taken into the City by decree of February 19, 1940. Thereafter, a resurvey was made of the lots owned by the defendant and it appears that what previously were known as Lots 6, 7, and 8 became, under the resurvey, Lots 5, 6, and 7. During the trial of the case, the plaintiff lumber company asked to amend its petition seeking foreclosure of the lien on the lots as so renamed and the amendment was permitted to be made. The building constructed by the defendant is located partially on Lot 5, as renamed, and partially on Lot 6, as renamed, and it is the contention of the defendant that the description contained in the statement of a mechanic's lien is not sufficient to sustain the lien. It is stated in 40 C. J. 219 and subsequent pages as follows: "The courts are liberal in upholding imperfect descriptions, and are reluctant to set aside a mechanic's lien claim merely because of a loose description of the property. * * * The test generally applied in determining the sufficiency of the description is whether it will enable one familiar with the locality to identify the property upon

which the lien is intended to be claimed with reasonable certainty. Other tests sometimes stated are whether the description is sufficient to apprise interested parties what property is sought to be charged, or whether the description, when defective and insufficient of itself, affords a reliable clue to extrinsic facts which will render it definite and certain. * * * A mistake in the description of the property sought to be charged will not invalidate the lien where it is not of a character to mislead and the property intended can be certainly identified notwithstanding. * * *" Facts taken into consideration in determining the sufficiency of the description are, for instance, that the person sought to be charged could not have been misled; and the fact that the owner named owns no other property in the locality. 40 C. J. 221-222. It is of course clear in this case that the defendant could not have been misled by the description contained in the statement of the mechanics' lien filed by the lumber company. Moreover, section 66-510, Rev. St. 1931, provides among other things: "The petition among other things shall allege the facts necessary for securing a lien under this article and a description of the property to be charged therewith. Provided, however, that in any action begun by any laborer, material man, sub-contractor or other person, to enforce a lien under the provisions of this article, if the petition shall state and the evidence shall show that the work and labor was done and the materials furnished for the use and benefit of the party or parties designated in the petition, and for use in, upon or about the property therein described and against which the lien is sought to be enforced, and shall also state and show that the owner or proprietor of said property or his agent, had knowledge of the fact that said work and labor was being done and said materials were being furnished for use, in upon and about said property, then and in that case any and all

defects in the statement of said lien account as filed or notice given as provided in this article shall be disregarded." It is not questioned herein that the petition in this case states and that the evidence shows that the work and labor was done and the materials were furnished for the use and the benefit of the defendant. We think, accordingly, that the contention of the defendant made in this connection must be overruled.

(3) The Court permitted the foreclosure to be made against Lots 5, 6, and 7 above mentioned. As already stated, the main part of the building of the defendant is located on Lot 5 and partially on Lot 6 above mentioned. Section 66-501, Rev. St. 1931, provides that the lien shall be given upon the land belonging to the owner to the extent of one acre, "or if such building, erection or improvements be upon any lot of land in any town, city, or village, then such lien shall be upon such building, erection or improvement and the lot or land upon which the same are situated." It was held in Oster v. Rabeneau, 46 Mo. 595, that the provision as to town and city lots is wholly independent of the provision preceding it and is complete in itself. In the case of Miller v. Hoffman, 26 Mo. App. 199, it was held: "The word lot in the law is to be taken in its usual, well defined sense when applied to real estate within a subdivided city block. It means the fractional part of a block, commonly known as a lot, limited by fixed boundaries on the recorded plat." And, it was accordingly held that a mechanics' lien should be allowed only on the lot or lots on which the building is located. We think, accordingly, that the decree of the Court herein should be modified by excluding therefrom the provision in regard to Lot 7 above mentioned.

(4) Section 66-516, Rev. St. 1931, provides as follows: "When the debtor has been served with summons, or appears in the action without service of summons, the judgment, if for the plaintiff, shall be against

such debtor, as in ordinary cases, with the addition that if no sufficient property of the debtor can be found to satisfy such judgment and costs of suit, then the residue thereof to be levied as provided in the next preceding section." In this case, the defendant was served personally and he appeared in the action. In view of the fact that the defendant had been adjudged bankrupt, no personal judgment was rendered against the defendant, but only a judgment foreclosing the lien against the property. In view of that fact, counsel for the defendant claim that the judgment, herein, is void; in other words, that in an action of foreclosure for a mechanics' lien where the defendant is personally summoned in this State or appears in the action, personal judgment against him is absolutely essential and in the absence thereof foreclosure of the mechanics' lien cannot be had. Counsel cite the case of Winfield v. Architectural Co., 68 Mo. App. 194. That is, of course, a harsh construction of the section of the statute. It was stated in the case of Hill v. Chowning, Scott & Co., 93 Mo. App. 620, that the section of the Missouri statute corresponding to section 66-516, supra, "has reference to cases where the debtor and the owner of the property are not one and the same persons," and continues, "In the case under consideration the debtors and the owners of the property are the same persons, therefore, said section as to proceedings like this does not apply, but is governed by the usual regulations of the code of practice." The case of Holland v. Cunliff, 96 Mo. App. 67, is in its facts very similar to the case at bar, and apparently a similar contention was made in that case as in this. The court, however, overruled the objection stating in part as follows: "The Missouri statute regulating the proceedings to complete a mechanic's lien does not inflexibly demand a perfect personal judgment against the primary debtor, as is manifest from the fact that as against him a mere publication will

suffice, in a proper case. * * * The fact stamps the procedure as one which may be aimed, if necessary, directly at the realty as the subject of suit. * * * The liability of the debtor may be enforced when it is proper. The fixing of a lien, however, upon the property is one of the prime objects which the statute has in view and is not diverted from by reason either of the insolvency or of the absence of the chief debtor. If he is insolvent the execution against him is nevertheless levied on the property charged with the lien. * * * The drift of all these rulings is to sustain the judgment here, in the circumstances confronting the court. The original debtors were made parties to this action. No personal judgment was entered against them because of their discharge from personal liability by force of the bankrupt act; but the lien affixed by their acts upon the property was not divested by their discharge, which had no larger effect than to release their personal liability. The principle on which this result must rest is that a discharge in bankruptcy does not extinguish the debt, but merely confers a personal immunity from the enforcement thereof. Hence, any valid lien already imposed on property to secure the debt, at the time when the bankruptcy proceeding became effective, continues in undiminished vigor, unless the bankrupt law itself or our own positive law abates it. The lien in question here is not of that class. The Missouri statutes fully sustain it, and the Federal law does not impair it." The instant contention of counsel must accordingly be overruled.

(5) In the spring of 1939, when it became known that the loan for which the defendant had applied would not be granted to the full extent, the lumber company for a time refused to deliver any more property to the defendant, but relented and, thereafter, furnished additional material. It is contended by counsel for the defendant that the original contract entered

into in the fall of 1938 for the furnishing of the material was ended and that the additional material was furnished under a new contract. We think this contention must be overruled. It does not appear that any new contract was entered into and that the material was actually furnished under the understanding arrived at between the lumber company and the defendant in the fall of 1938.

(6) The lien statement of the lumber company contains an item of $10.00 loaned to the defendant to procure a loan on his property. This item obviously is not lienable and the judgment in favor of the lumber company should be modified by eliminating it.

II. As to the lien of Montgomery Ward and Company:

The lien in this case was filed on November 15, 1939. It was required to be filed, under the provisions of section 66-508, Rev. St., 1931, within four months after the indebtedness had accrued. It is stated in 36 Am. Jur. 96 that "the time for filing a mechanic's lien begins to run from the time the last item of the account is furnished, when the entire account is a continuous and connected transaction or running account." It was accordingly necessary that the last item should have been furnished not earlier than July 15, 1939. The statement of the account shows some plumbing furnished to the defendant on June 20, 1939 in the sum of $22.89. It further shows that on July 26, 1939, there were furnished to the defendant "stove parts" in the sums of 60¢ and 50¢. It was contended, however, on behalf of the defendant that these latter items, being parts of a stove, which is not a fixture, were not lienable and that, accordingly, the mechanic's lien statement was not filed within the period of four months after the last lienable item was furnished on June 20, 1939. It appears to be the law that "It is necessary

that the material should be lienable and the time for filing a lien for materials furnished to a contractor cannot be computed from the date of the last item in the claimant's account unless such item was the subject of a lien." 36 Am. Jur. 96; Brooks-Sanford Co. v. Theodore Telier Constr. Co., 22 Ont. L. Rep. 176, 19 Ann. Cas. 585. In Miller v. Heath, 22 Pa. Sup. Ct. 313, the court speaking of the last item under a mechanic's lien stated that "this was the only item of plaintiff's claim which was furnished within six months prior to the filing of his lien, and unless his right to recover for this item, under the lien as filed, can be sustained, the whole proceeding must fall." See also Sechrist v. Asphalt Co. (Mo. App.) 63 S. W. 2d 193. It is held in some of the cases that it must appear from the face of the account that the law gives a lien for the items appearing therein and that extrinsic evidence is not admissible for the purpose of explaining it. Rude v. Mitchell, 97 Mo. 365; Grace v. Nesbitt, 109 Mo. 19; Dwyer Brick Works v. Flanagan Bros., 87 Mo. App. 340; Forabella v. Porter, 130 Miscel. 680; 225 N. Y. S. 417; Armstrong v. Chisolm, 100 App. Div. 440; 91 N. Y. S.; John Roschirt, Inc., v. Rosenstock, 138 Miscel. 515; 247 N. Y. S. 420. In F. M. Sibley Lumber Co. v. Doran, 203 Mich. 280; 168 N. W. 957, however, parol evidence was admitted for the purpose of explaining the statement of account. It is not necessary to decide the point in this case, or to determine the effect of the provisions of section 66-511, Rev. St. 1931. In any event the items of July 26th were on their face, not lienable and in order that the filing of the lien statement might be brought within the four-month's period provided by the statute, the burden of proof to show the items lienable was upon the cross-petitioner, Montgomery Ward and Company. 36 Am. Jur. 166. And, the proof in this connection should be reasonably clear. See Laitner Plumbing and Heating Co. v. Platt Land

Co. (Mo. App.) 67 S. W. 2d 524. We must, accordingly, examine the testimony on that point. The defendant testified that the items charged as of July 26, 1939 were parts which were used to remedy defects in his Kero-Flame Cooking Range; that an employee of Montgomery Ward and Company came to his home in order to remedy these defects; and that he paid such employee for these "stove parts" at the time. It appears further that the cross-petitioner sold to the defendant a furnace on December 10, 1938. The testimony for the defendant shows that it was installed and used during the winter of 1938 and 1939 and that he had no trouble with it during that winter and hence needed no "stove parts" for it. There is no competent evidence in the record to contradict the testimony in connection with the furnace and if the items of July 26, 1939 were used in connection with it, they were in the nature of repairs, and it would seem to be doubtful—though we need not decide the point—that they were lienable. It is held in Gem State Lumber Co. v. Witty, 37 Ida. 489; 217 P. 1027, that when a heating plant in an apartment building was so far completed in the month of December that tenants occupied the building throughout the remainder of the winter without complaint as to the same being incomplete or unsatisfactory in any particular, the installation of a cold-air pipe and covering certain pipes with insulating material in July following would not revive the time for filing a lien which had commenced to run in the preceding December. The case for the defendant is, of course, strengthened by the fact that we must, naturally, indulge in the presumption that the items furnished were what they purported to be—namely, parts for a movable stove.

The cross-petitioner, Montgomery Ward & Company, claims that the so-called "stove parts" were used in connection with the plumbing and heating system in defendant's residence. We have already mentioned the

testimony in regard to the furnace. Marion Berset, credit manager for Montgomery Ward and Company, testified that the items of July 26, 1939, denominated "stove parts" in the statement for the lien, were items which came from the stove department of Montgomery Ward and Company. She did not know what the items were, but thought that they might be "ells" which could be used in connection with plumbing and heating; that Montgomery Ward and Company had two accounts against the defendant, one account covering the items sold by conditional sale, and another, an open account; that items which were to go into the construction of the residence of the plaintiff were charged to the open account; that items for repair, such as the defendant claimed the stove-parts to be, did not go through her hands, and that they would not have appeared on her books. The inference which she left was, that since the items appeared on the books of her department, they must have been used in the construction of the building of the defendant, though, as she stated before, she did not know what the items were; further, that repair for the Kero-Flame stove would have been a spring, not costing over ten cents. Russell Hibbard, the store manager of Montgomery Ward and Company for the thirteen past years, testified that "stove parts as specified on our books determine only the department in which the merchandise is sold"; that since the defendant testified that he paid for the stove parts at the time when he put them in his own home it would have been impossible for these items to have appeared on the books of Montgomery Ward and Company; that when the items were bought he was consulted and told that they were to go into the house of the defendant and he approved the items. He did not himself have any knowledge of what the items were or where they were used.

It is doubtful that the substance of the testimony on

behalf of the cross-petitioner shows anything more than that the items furnished July 26th to the defendant *might* be lienable items in connection with the plumbing and heating in defendant's residence. Miss Berset seems to have been of the opinion that because the items went to the residence of the defendant they were properly included in the account. That is substantiated by the fact that her books showed other non-lienable items. There is, for instance, a charge for window shades in the account and one for a stove knob, both of which items would seem to be not lienable, yet, they were included in the open account of Montgomery Ward and Company, apparently merely because of the fact that they were to be used in the residence of the defendant. But, that is not sufficient. It is stated in 40 C. J. 277 that the lien usually does not attach to articles which have not been divested of their character as personal property by being attached to the realty so as to become a part thereof. In 36 Am. Jur. 27, it is stated "such lien laws are not intended to create liens on mere personal chattels or on property on which a common-law lien may be had, but on lands or things in some manner attached to the realty, to secure the erection of valuable structures and protect the interest of those who may build or assist in building the same and furnish materials." Perhaps, the erroneous idea that everything which was used in a house is lienable has caused the difficulty in this case. Furthermore, the testimony that the term "stove parts" was intended to designate the department from which the articles were taken is rather peculiar. An examination of the account discloses that in no other instance was an item in the account designated by the department from which it was taken. In all instances the items are specifically designated by their proper name. Quite a number of "ells" appear in the account, and if, as Miss Berset testified, the stove parts of July 26, 1939 were

"ells", no particular reason appears why these items were not designated as "ells", the same as the other items of "ells" in the statement of the account. We think it is rather unusual that items sold should be designated merely by stating the department from which they are taken. Merchants almost universally use sales slips on which are designated, unless, perhaps, they are for cash, the items which are sold. These sales slips, if produced in the case, should have shown the exact situation; they were not produced in this case and no explanation thereof was given. The person who sold the items could have identified his or her handwriting on these sales slips and probably would have been able to give a full explanation. That person was not produced as a witness and no explanation thereof was given. Whether or not these items were lienable was the vital point in the case. Evidence thereon was introduced by Montgomery Ward and Company in its case in chief and again in rebuttal. Hence, the importance of the point was fully realized during the trial of the case and all of the available evidence on that point should have been produced or an explanation given why that was not done. Taking all the facts into consideration—the testimony for the defendant; the fact that it is unlikely that an item would be designated by the department from which it is taken; the presumption that the items of July 26, 1939 were what they purport to be in the statement of the lien; the failure of the cross-petitioner to produce the best available evidence, and failure to explain it, and the other facts and circumstances appearing in the case—we think that we are constrained to hold that the cross-petitioner has failed to sustain the burden of proof in showing that the items furnished the defendant on July 26, 1939 were lienable items. The judgment in its favor cannot, accordingly, be sustained.

The judgment in favor of the lumber company should

be modified as hereinbefore indicated, and as modified, it is affirmed. The judgment in favor of Montgomery Ward and Company is reversed and remanded to the trial court for further or additional proceedings not inconsistent with this opinion.

KIMBALL, Ch. J., and RINER, J., concur.