N. R. WALL, Appellant,

v.

AYRSHIRE CORPORATION et al., Appellees.

No. 13811.

Court of Civil Appeals of Texas.

Houston.

Dec. 14, 1961.

Baker, Botts, Andrews & Shepherd, James G. Ulmer, Houston, for appellant.

Vinson, Elkins, Weems & Searls, F. Russell Kendall, Jarrel D. McDaniel, Houston, for appellee.

BELL, Chief Justice.

This is an appeal from a summary judgment rendered in favor of appellees in response to their motion for summary judgment.

Appellant N. R. Wall was a real estate agent. On February 1, 1946, he entered into a contract with appellee Ayrshire Corporation under the terms of which he was given the exclusive sales agency to sell the lots into which certain property should be thereafter subdivided. The property, which was unplatted acreage in the City of Houston, consisted of 215 acres. After the making of the contract, from time to time portions of the acreage tract were subdivided and thus made into residential subdivisions. The subdivisions were called "Ayrshire". There were twelve sections subdivided by Ayrshire Corporation. One other section, being numbered 13, was subdivided by appellee, Roy Miller, after 9.268 acres of the 215 acre tract had been sold by Ayrshire Corporation to appellee, J. B. Cassidy, and by him sold to Miller. Section 14 was a subdivision of some 14 acres conveyed by Ayrshire to Ayrshire Pension Trust and by the Trust to John Hannah. For all lots which were sold in the first 12 sections of Ayrshire appellant received the commission agreed upon in the contract. He was paid the

commission even though the sale was made by someone else. This was in accordance with the agreement.

In 1957 this suit was brought against Ayrshire Corporation, J. B. Cassidy and Roy Miller. Appellant in his original petition sought recovery of commissions on two sales of acreage tracts out of the 215 acre tract that had not been subdivided. By his amended petition, filed in November, 1960, appellant sought to recover his asserted commissions on these and two other acreage tracts. Too, he alleged that 19 acres of the 215 acres remained undisposed of and he sought a judgment declaring he would be entitled to his commission on any sale of this acreage. The four sales on which appellant claims commissions are as follows:

1. The sale for $27,500.00 by Ayrshire Corporation to the City of Houston of approximately 5½ acres for park and right-of-way purposes. The sale was of unplatted acreage and was made under threat of condemnation in October, 1953.

2. The conveyance by Ayrshire Corporation to J. B. Cassidy of 9.268 acres on April 9, 1956. This was on the same day conveyed by Cassidy to Roy Miller. The only reference we find to the sale price is in appellant's petition, where he asserts it was $200,000.00 and in the alternative it was a distribution of assets of Ayrshire Corporation and had that market value. This was unplatted acreage. A short time later it was platted by Miller into Ayrshire Section 13.

3. The conveyance in 1959 by Ayrshire Corporation to David Hannah and W. F. Burge, Trustees of Ayrshire Pension Trust of 14.849 acres. This was later conveyed to John Hannah, brother of David Hannah, who was President of Ayrshire Corporation. The price was allegedly $300,000.00.

4. The sale by Ayrshire Corporation in February, 1959 to the City of Houston of 4.5 acres of unplatted land for right-of-way for street purposes. This sale was under threat of condemnation.

Appellee Ayrshire Corporation answered, asserting a failure by appellant to perform. It also claimed cancellation of the contract in September, 1957. Further it contended appellant was entitled to a commission only on "lots" sold where the property had been made into a city subdivision and that he was entitled to no commission on acreage sold that was no part of a subdivision. It pled full payment of commissions on all lots sold.

Appellees Cassidy and Miller pled they were not parties to the written contract sued on and had no agreement of any kind to pay any commission and if there was any agreement it rested in parol and was within the inhibition of the Real Estate License Act, Article 6573a, Vernon's Ann.Civ.Tex.St. Appellant on appeal does not seek to reverse the judgment favorable to these two appellees and we will notice the suit as to them no further.

The court sustained appellee Ayrshire's motion for summary judgment on the theory that appellant was entitled to commissions only on the sale of "lots" into which acreage might have been subdivided and that the sales of acreage were not sales of "lots." Too, as to the sales in 1959, appellant was entitled to no commission as appellee had cancelled the contract.

Appellant relies for reversal on two points of error.

1. He contends the contract entitled him to a commission on the sale of any portion of the 215 acres whether it had been made into a city subdivision or not.

2. He contends the contract was not cancellable by appellee without giving him a reasonable opportunity to perform and that he had not been given such opportunity. At all events, he says, a fact question was raised as to whether he had been given such reasonable opportunity.

We have reached the conclusion that the trial court correctly sustained the motion for summary judgment.

We think the contract imposed no duty on appellee to subdivide the whole of the 215

acres into a city subdivision or subdivisions and that the agency of appellant was only to sell such "lots" as the property was divided into by the platting of city subdivisions. It should be kept in mind that appellee has fully paid appellant his commission on every lot sold whether he actually made the sale or not. In fact, between 1950 and 1956 appellee paid appellant some $92,000.00 in commissions though appellant neither personally, nor through his agent, made any sale. Appellant claims he was ready and willing to do so but was prevented from doing so by appellee.

The contract reads as follows:

"Ayrshire Corporation, a Texas Corporation with its principal place of business in Houston, Harris County, Texas, is the owner of 215.960 acres of land made up of two tracts in the P. W. Rose Survey in Harris County, Texas, one tract containing 23.060 acres and the other tract embracing 192.9 acres, such 215.960 acres being all the land formerly owned by League Davis Properties and lying South of Bellaire Boulevard, West of Stella Link Road, East of G. H. and S. A. Railroad, and North of Brays Bayou (Such Bayou forming the South boundary of the property).

"At its own cost and expense, Ayrshire Corporation contemplates subdividing said 215.960 acres into a city subdivision and constructing a residential building on each lot of the subdivision, to the end that by December 1, 1947 all such subdividing and building should be completed.

"N. R. Wall, a resident of Houston, Harris County, Texas, doing business under the name of N. R. Wall Realty Company, is engaged in the business of acting as agent for owners of real estate in Harris County, Texas, in the selling thereof and receiving a commission therefor on each sale.

"Ayrshire Corporation is hereinafter referred to as 'CORPORATION' and N. R. Wall (N. R. Wall Realty Company) is hereinafter referred to as 'WALL'.

"For and in consideration of the agreements hereinafter set forth to be performed by WALL and in consideration of the sum of Ten and No/100 ($10.00) Dollars and other good and valuable considerations to Corporation paid in cash by WALL, the receipt and sufficiency of which CORPORATION hereby acknowledges, CORPORATION hereby gives and grants unto WALL the sole and exclusive right to, and appoints WALL its sole and exclusive Agent for the purpose of selling all the lots into which said 215.960 acres are subdivided, for such prices and upon such terms and consideration per unit as CORPORATION may from time to time name.

"As compensation for each sale of an improved portion of the property which WALL makes, CORPORATION shall pay WALL an amount in cash equal to five (5%) percent of the sales price, and as compensation for each sale of an unimproved portion of the property which WALL makes, CORPORATION shall pay WALL an amount in cash equal to ten (10%) percent of the sale price, such compensation in each case to be payable at the time the sale is closed, and WALL is authorized as a matter of convenience to deduct and retain his proper compensation out of the sale proceeds.

"Should all or any portion of said property be sold during the life of this agreement by any party other than WALL, CORPORATION shall nevertheless pay WALL the same compensation therefor as though WALL had made the sale. When the terms and price of sale of any portion of the property have been fixed by CORPORATION then WALL shall have the right to execute contracts of sale

covering such and binding CORPORATION thereto, and may accept earnest money deposits in connection therewith, and upon payment of the sale price by the purchaser, CORPORATION will execute and deliver to the purchaser a general warranty deed conveying to that party the property covered by the sale contract, subject to building restrictions and the terms of the sale contract. On each sale, CORPORATION shall, at its election, either furnish a complete abstract or an owner's title policy showing title to the property involved in the sale good and marketable in CORPORATION, subject to building restrictions and the terms of the sale contract.

"WALL is given the right to erect, at his expense, a field office and place same in progressively satisfactory locations throughout the subdivision to accelerate sales.

"WALL agrees to prepare and execute advertising in order to accelerate sales of all houses in the entire subdivision, all at WALL'S own cost and expense, and without cost or expense to CORPORATION, prepare or cause the preparation of any and all aids deemed necessary by WALL. WALL agrees to diligently undertake the sales herein contemplated and use his best efforts in that regard. All sales, sales policies and advertising shall have prior approval of the CORPORATION.   JBC DH NRW

"CORPORATION shall never have any liability for the acts of any servant, employee, agent or representative of WALL, but WALL alone shall be responsible therefor.

"This contract is and shall be binding upon and inure to the benefit of the respective parties hereto and their respective heirs, successors and assigns.

"EXECUTED in duplicate at Houston, Texas this February 1, 1946.

"AYRSHIRE CORPORATION

"ATTEST

"By   David Hannah, Jr.

"J. B. Cassidy
"Secretary

"N. R. Wall
"Doing Business as N. R. Wall Realty Company

(acknowledgments)"

Both parties treat the contract as being unambiguous but each contends for a legal construction favorable to their respective contentions as set out above. We consider it to be unambiguous and its construction was a matter for the trial court.

■ In construing the contract the intention of the parties is to be ascertained from a consideration of all its provisions. Universal C. I. T. Credit Corporation v. Daniel, 150 Tex. 513, 243 S.W.2d 154; Brown v. Brown, Tex.Civ.App., 245 S.W.2d 995, writ ref.; Pacific Mutual Life Ins. Co. v. Westglen Park, Inc., 160 Tex. 1, 325 S.W.2d 113.

The first paragraph of the contract recites the ownership by Ayrshire of a specifically described 215.960 acres of land in the City of Houston. The second paragraph states Ayrshire at its own cost and expense "contemplates subdividing such acreage into a city subdivision and constructing a residential building on each 'lot' of the subdivision to the end that by December 1, 1947 all such subdividing and building should be completed."

This in nowise obligates Ayrshire to subdivide all of said acreage. There is no promise to subdivide all of the acreage. The provision merely shows that at that time it intended to at different times subdivide portions of the acreage and thought it would all be platted by December, 1947. Newsome v. Brown, Tex.Civ.App., 157 S.W. 203, no writ history.

Following the first two paragraphs is one reciting that appellant is engaged in the business of acting as agent for owners of real estate in selling it and receiving

a commission. Then follows the very significant paragraph which creates the agency and defines its nature. It grants and gives appellant the sole and exclusive right to sell "all lots into which said 215.960 acres are subdivided." The subject matter of the agency is the sale of lots into which the 215 acres may be subdivided. This is the only agency created. There was no promise, however, to divide all of the acreage into lots.

Following the paragraph creating the agency is the paragraph for payment of compensation. It is provided that for each sale of an improved portion "of the property" appellant shall be paid 5% of the sales price and for each sale of an "unimproved portion of the property" he shall receive 10% of the sale price. When the term "property" is here used, keeping in mind the nature of the agency created, that is, one to sell the lots into which the land may be divided, it means a lot or lots. Payment of the commission is for the execution of the agency created. The commission for "improved portion of the property" must be read in connection with the previous provision that Ayrshire contemplated dividing the property into lots of a city subdivision and constructing a residential building on each lot. Further, the contract provides that upon the sale of "any portion of the property" the deed and title policies shall be "subject to building restrictions." This reflects an intention that the subject matter of the agency and the payment of commissions is the sale of lots of a subdivision where there have been restrictions imposed. The obligation to pay the commission is for the sale of a lot.

It is true that the contract has what appellant calls a "protective" provision. This is the paragraph that provides that if any portion of the property is sold by others appellant will be entitled to his commission. This was merely to make certain the exclusive nature of the agency. However, we are of the view that the term "property" is used only in the sense of lots of a subdivision which is the subject matter of the agency.

Appellant urges that the term "lot" is of variable meaning and can include acreage. The term can have different connotations, depending upon all facts and circumstances attending its use. Where it is used as here in connection with a contemplated platting of urban acreage into a city residential subdivision, we think it can have but one meaning and that is it is a fractional part of a block limited by fixed boundaries on an approved recorded plat. Mawson-Peterson Lumber Company v. Sprinkle, 59 Wyo. 334, 140 P.2d 588, 147 A.L.R. 1089; Ontario Land & Improvement Co. v. Bedford, 90 Cal. 181, 27 P. 39; Town of Greendale v. Suit, 163 Ind. 282, 71 N.E. 658; Green Avenue Apartments v. Chambers, Tex.Civ.App., 239 S.W.2d 675, no writ history.

The above construction precludes the recovery of any commission on the sale of any of the four enumerated tracts.

There is an additional reason why appellant is precluded from recovery of a commission on the sale of the 4½ acres to the City of Houston and the sale of the 14 acres to the Ayrshire Pension Trust. Both of these sales were made in 1959, after the contract had been terminated in September, 1957.

Appellant's position is that appellee could not unilaterally terminate the contract because he had made extensive expenditures of money in connection with promotion of the subdivision and he should be given a reasonable opportunity to accomplish the purpose of the agency. Additionally he says the agency is one coupled with an interest.

We are unable to agree with appellant. The agency fixed no time for its termination. It was of indefinite duration. The general rule is where an agency to sell real estate, or a brokerage contract, which this is, is of indefinite duration, it not being for a fixed time, it may be ter-

minated at the will of the principal. 2 Tex.Jur.2d, Sec. 15, p. 450; Evans v. Gay, Tex.Civ.App., 74 S.W. 575, no writ history; Nichols & Jackson v. Carson, Tex.Civ.App., 220 S.W. 297, no writ history; Neal v. Lehman, 11 Tex.Civ.App. 461, 34 S.W. 153, no writ history; Brigham v. Cason, Tex.Civ. App., 233 S.W. 530, no writ history. We are unable to see that any different rules are applicable where the contract involves sales of lots in a subdivision. We deem the authorities cited by appellant factually distinguishable from the case before us.

We are not confronted with a situation where the agent may have made substantial expenditures and is given no reasonable opportunity to perform, and we do not pass upon an agent's rights in such situation. Admittedly, here sales were made of lots prior to December, 1950, on which appellant received his commissions and he was paid some $92,000.00 in commissions from December, 1950 through 1956, when the sales were actually made by other persons. These commissions covered 12 sections of Ayrshire Addition.

Neither was the agency one coupled with an interest. To be an agency coupled with an interest the agent must have a present interest in the property upon which the power is to operate. It does not suffice that the agent have an interest in the proceeds to be derived from the sale of the property. There must be a beneficial interest in the thing itself. 2 Tex.Jur.2d, Agency, Sec. 25; Superior Oil Co. v. Stanolind Oil & Gas Co., Tex.Civ.App., 230 S.W. 2d 346, aff'd 150 Tex. 317, 240 S.W.2d 281; Tinsley v. Dowell, 87 Tex. 23, 26 S. W. 946; Browne v. King, Tex.Civ.App., 196 S.W. 884, aff'd 111 Tex. 330, 235 S.W. 522; Neal v. Lehman, 11 Tex.Civ.App. 461, 34 S.W. 153, no writ history.

Our holding that Ayrshire Corporation has effectually terminated the contract will also prevent appellant from any recovery of a commission for the unsold part of said 215 acres should it ever be sold.

The judgment of the trial court is affirmed, Associate Justice Coleman dissenting in part.

COLEMAN, Justice (dissenting).

I respectfully dissent from the conclusions reached by the majority of this Court in construing that portion of the contract reading: "Should all or any portion of said property be sold during the life of this agreement by any party other than WALL,. CORPORATION shall nevertheless pay WALL the same compensation therefor as though WALL had made the sale * * *" It appears that the sale made by Ayrshire Corporation to J. B. Cassidy on April 9, 1956, would be governed by this provision and that a commission would be due WALL by reason thereof.

Since this is an appeal from a summary judgment, I would reverse and remand the case for trial on the merits.