**Glenn CHAIN et al., Appellants,**

**v.**

**James K. PYE et al., Appellees.**

**No. 6962.**

Court of Civil Appeals of Texas.

Beaumont.

May 16, 1968.

Schlanger, Cook & Cohn, Martin & Knox, Houston, for appellants.

Garrison, Renfrow, Zeleskey, Cornelius & Rogers, Lufkin, Ross Hightower, Livingston, for appellees.

PARKER, Justice.

Summary judgment was rendered and entered on the 28th day of August, 1967, for the plaintiffs, James K. Pye, et al., and against defendants, Glenn A. Chain and Neil Chain, cancelling and holding for naught and removing as clouds upon plaintiffs' title to a 95.1 acre tract of land and a 2.6 acre tract of land a power of attorney dated August 21, 1964, from Andrew Jackson to Glenn Chain, recorded in Vol. 205, page 35, of the Deed Records of Polk County, Texas, and the purported assignment of an interest therein dated May 14, 1965, from Glenn A. Chain to Neil Chain, recorded in Vol. 209, page 45, Deed Records of Polk County, Texas. Such judgment further provided that plaintiffs take nothing upon their claim for damages, as prayed for in their petition, and that the defendants' claim for damages, as prayed for in their cross action, be dismissed. Defendants have appealed. The parties will be designated as in the trial court.

On July 31, 1967, a "Partial Summary Judgment" was rendered and entered, can-

celling and removing as clouds upon plaintiffs' title to such lands the instruments above identified, which was incorporated in the final judgment rendered and entered August 28, 1967. In such July 31, 1967 partial summary judgment, the court found an absence of any genuine issue as to any material fact, except as to the amount of damages.

■ Defendants' second point of error is:

The error of the trial court in refusing defendants' motion to clarify the partial summary judgment.

The partial summary judgment is clear and unambiguous. This partial summary judgment for plaintiffs specified:

It is further ORDERED that plaintiffs' claim for damages as prayed for in their original petition and defendants' claim for damages as prayed for in their cross-action remain on the docket of this Court for trial on the merits, and that the trial of this cause be limited to a determination of liability of the respective parties for damages and the amount thereof.

Defendants' "motion to clarify" has as its only argument that defendants could not tell whether "the Court has already concluded that said claim for damages cannot be sustained." The claim for damages would not have been retained for trial on the merits if the issue of liability and damages had been foreclosed.

In the final judgment, rendered and entered on the 28th of August, it is recited:

Plaintiffs in open Court announced that they would not offer evidence in support of their said claim for damages, and the defendants in open Court announced that they would not further prosecute their said claim for damages, and moved for nonsuit.

This is followed by the order, judgment and decree that plaintiffs take nothing upon

their claim for damages and that the defendants' claim for damages is dismissed. The partial summary judgment and the final judgment comply with the provisions of Texas Rules of Civil Procedure, rule 166–A. The matters of liability for and the amount of damages are not before this court. Defendants' second point of error is overruled.

Defendants' first point of error is:

The error of the trial court in rendering summary judgment for cancellation of the agreement.

Omitting the description of the lands and the acknowledgements, the power of attorney, dated August 21, 1964, is as follows:

THE STATE OF TEXAS⎫
COUNTY OF POLK       ⎬KNOW ALL MEN BY THESE PRESENTS:
                                 ⎭

## WITNESSETH:

THAT this agreement, by and between Glenn Chain, Party of the First Part, hereinafter called "Developer", and Andrew Jackson, Party of the Second Part, hereinafter called "Owner".

In consideration of the mutual promises herein contained and other good and valuable consideration, be it agreed;

That Owner agrees that Developer shall have the exclusive and irrevocable right to develop the lands as described in Exhibit "A" attached hereto and made a part hereof for all purposes and does grant to Developer full and complete power for such development in its planning, general layout, or scheme, advertising, and hypothecating the land, if necessary; Developer, shall if he deems it advisable, incorporate this development, [sic] It is further agreed by owner that Developer shall have a full power of attorney to convey portions of these lands as sales are made, however, it is understood that Developer will pay to owner one-half (½) of the net profit after all expenses for such development have been deducted from the sales price. By this instrument, Owner hereby grants, sells and conveys an undivided one-half (½) interest in and to all the net proceeds from any and all sales of the land described in Exhibit "A".

That Developer shall pay all expenses of the development of these lands including the following; surveying, engineering, street layout, paving, advertising, legal expenses and any other expenses incident to the development of these lands. It is agreed that Developer shall be totally and fully reimbursed for all of his expenditures from the proceeds of the sale of these lands and the net amount shall be equally divided between the Developer and Owner.

That this Contract shall terminate and become null and void only after the last parcel of these lands have been sold or disposed of.

This Contract contains the entire agreement by and between the parties and any amendments hereto must be in writing and signed by both parties.

WITNESS our hands this the 21st day of Aug. 1964.

OWNER                                                    DEVELOPER

Andrew Jackson                                      Glenn Chain

Plaintiffs, Pye, et al., in their first amended original petition, alleged that prior to August 21, 1964, Andrew Jackson, since deceased, was the owner of 97.7 acres and that on that date, Glenn Chain induced him to sign the foregoing agreement; that Chain fraudulently represented to Jackson that the agreement was one whereby the Jackson land would be held, developed and sold as a unit with land claimed to be owned by Chain, and that such a joint project would be of mutual advantage to the parties; that Jackson executed such instrument relying on such representations; that no consideration or thing of value was paid or given by Chain to Jackson for the signing of the instrument; that on or about October 13, 1964, before the performance of any service under the agreement, Jackson discovered the true nature of the instrument, and that it gave Chain one-half of the net profit derived from any sale of any part of the land; that upon such discovery, Jackson filed in the Deed Records an instrument revoking the "purported power of attorney."

The petition further alleged that plaintiffs had acquired Jackson's title, that Glenn Chain had assigned an interest in the instrument to Neil Chain and that the assertion of claims under the "instrument had hampered and delayed plaintiffs' plans for development and sale of such lands," to plaintiffs' damages in the amount of $750,000. Copies of the power of attorney and the assignment by Glenn Chain to Neil Chain are attached to plaintiffs' pleadings.

Plaintiffs prayed for cancellation, removal of cloud from title and damages.

Defendants' trial answer included a general denial but admitted the execution of the instrument of August 21, 1964, and Jackson's then ownership of the land, averred the payment of a $10.00 separate cash consideration and that Chain then, as presently, planned to develop the lands owned by Jackson with other lands owned by Glenn Chain and also with lands owned by one Wilson Harden, this the subject of Chain v. Potts, Tex.Civ.App., 429 S.W.2d 636.

Defendants further alleged that Andrew Jackson was of limited education and had no understanding of the problems involved in development and sale of land, that the 97.7 acres lies on the shore of a projected lake to embrace several thousand acres and afford great opportunities for the profit of those owning its shores; that Glenn and Neil Chain have long owned lands adjacent to those of Andrew Jackson and Wilson Harden, were aware of its possibilities of profit and intended by said agreement to make possible the realization by Jackson of profits several times the price paid by plaintiffs for the land; that plaintiffs had bought Jackson's land for $36,940.00 and hoped to realize $750,000 in profit therefrom; that such purchase at such price was unconscionable conduct on the part of plaintiffs, defeating their right to equitable relief.

The answer further alleged that their agreement was a power of attorney coupled with an interest, that they had expended services amounting to more than $15,000 in preparation to perform the contract before notice of any intent by Jackson to question their rights thereunder, so that plaintiffs were estopped to deny the effectiveness of the contract.

By cross-action, defendants adopted the allegations of their answer and sought a declaratory judgment, fixing their rights to proceed under the agreement of August 21, 1964, offering to do all prerequisites thereto which might be required in equity.

Alternatively, the cross-action sought $150,000 damages for the wrongful interference of plaintiffs with their rights under the agreement. Plaintiffs filed only a general denial to the cross-action.

Plaintiffs filed a motion for summary judgment based on the affidavit of Ross Hightower, an attorney, proving the deeds from Jackson to plaintiffs and the proceedings for qualification of the executrix, and on the "depositions" on file, which consisted only of the deposition of Andrew Jackson.

The undisputed evidence shows that no improvement or development or sale was ever made by defendants on Andrew Jackson's 97.7 acres.

Neil Chain, by affidavit, swore that he had expended many hours of time in procuring studies of the properties involved in this contract described in plaintiffs' petition with Jessie Ray, a contractor, Clyde Brennan, an accountant, Ronald Boeker, an architect, and Martin, an attorney, to develop a plan for the subdivision and sale of the property covered by the contract. He had made many trips to Livingston and the vicinity of the land in controversy and had spent more than fifteen days of his time in preparing to perform the contract. He is still prepared to go forward with the contract when the title objections are removed. He never knew of the claim that Andrew Jackson had revoked the contract until he was advised that plaintiffs in the case had purchased the property from Jackson.

This contract between Glenn Chain and Andrew Jackson, dated August 21, 1964, conveyed no interest in the land itself to Chain. The power of attorney given by Jackson to Chain was not coupled with an interest in the land itself. No services under the power of attorney were ever performed by Glenn Chain. This power of attorney was terminated by the following acts and occurrences: (1) Andrew Jackson died in February of 1967. (2) Before his death, Andrew Jackson revoked the same and executed an instrument dated October 13, 1964, filed for record October 13, 1964, and duly recorded in the office of the District Clerk of Polk County, revoking, cancelling, setting aside, and holding for naught such power of attorney, declaring the same to be of no force and effect and not binding upon him, the said Andrew Jackson, his heirs and assigns. (3) On March 30, 1964, Andrew Jackson conveyed an undivided ¾ interest in the land to James K. Pye, Ivan G. Rice, and Lake Livingston, Inc., and on the 30th day of March, 1965, Jackson conveyed to J. Ernest Miller an undivided ¼ interest in said land, retaining a vendor's lien on such ¼ undivided interest to secure a portion of the purchase price thereof. (4) By the instant suit being filed by plaintiffs, Andrew Jackson, James K. Pye, Ivan G. Rice and J. Ernest Miller, against Glenn Chain and his assignee, Neil Chain.

■ Without question, the power to revoke the power of attorney existed and was exercised. If such parties had no right to revoke same, then they are liable for damages suffered by Glenn Chain and Neil Chain. McDonald v. Davis, 389 S.W.2d 494 (Civ.App., 1965, no writ his.).

There are only two fact issues in this record which are disputed. Neither of them is a genuine issue of material fact.

■■ The first disputed issue is whether Glenn Chain paid Andrew Jackson $10.00 or paid him nothing to sign the power of attorney. Taking it as true that Chain paid Andrew Jackson $10.00 in cash, it amounts to no consideration at all. In an agency contract, performance and not cash is the consideration. There is no evidence of performance or the beginning of performance under the power of attorney. It is undisputed that the power of attorney conveyed no interest in the property, but only in the net profits as compensation only for personal services by the agent, Glenn Chain, to be performed in the future. The testimony of Jackson is that nothing visible or beneficial was done on his land for him by the defendants. The affidavit of Jack Martin does not contradict Jackson. Martin says Chain spent time and expenses "in preparation for the development" of the land. The affidavit of Neil Chain says the same thing. The power of attorney must be regarded as unsupported by consideration.

To be an agency coupled with an interest the agent must have a present interest in the property upon which the power is to operate. It does not suffice that the agent have an interest in the proceeds to be derived from the sale of the property.

There must be a beneficial interest in the thing itself.

Wall v. Ayrshire Corporation, 352 S.W.2d 496 (Tex.Civ.App., 1961, no writ).

■ The defendants emphasize two things in the power of attorney: (1) "that Owner agrees that Developer shall have the exclusive and irrevocable right to develop the lands," and (2) "that this Contract shall terminate and become null and void only after the last parcel of these lands have been sold or disposed of." Defendants contend these provisions denied Jackson the power to revoke the power of attorney. Even so, Jackson had the power to revoke the agency contract. As said in Mechem, Outlines on the Law of Agency, 3rd Edition, page 119:

> The fact that the agent may have an *interest* in the execution of the authority in order that he may earn his commissions or other promised compensation for the doing of the act, is not enough to render it irrevocable. An action for breach of contract, if there was a contract, is deemed an adequate remedy.

> So the fact that the authority was called "irrevocable" or "exclusive" will not prevent its revocation. Its nature and not the name given determines that matter. Such stipulations usually amount to no more than contracts not to revoke, which may nevertheless be broken (since they cannot ordinarily be specifically enforced), subject to a liability for the breach of the contract.

In 1909, in Johnson & Moran v. Buchanan, 54 Tex.Civ.App. 328, 116 S.W. 875 (no writ), citing Mechem, said much the same thing:

As a contract of agency cannot be specifically enforced, the principal may revoke the authority given the agent when that authority is not coupled with an interest, even though the contract of agency expressly provides that it is irrevocable; but, while in this sense he has the right to revoke it, the exercise of this power in violation of the terms of the contract is subject to the same liability to the agent as would be incurred by the breach of any other contract.

Again in 1921, in Brigham v. Cason, 233 S.W. 530 (Tex.Civ.App., no writ), it was said:

> It is the general rule of law, therefore, that, as between the agent and his principal, the authority of the agent may be revoked by the principal at his will at any time, and with or without good reason therefor, except in those cases where the authority is coupled with sufficient interest in the agent. And this is true, even though the authority be in express terms declared to be "exclusive" or "irrevocable."

■ The document in question is one calling for personal services of Chain. Such a contract is not specifically enforceable. E. M. Goodwin, Inc. v. Stuart, 125 Tex. 212, 82 S.W.2d 632 (1935, opinion adopted); Ansley Realty Company v. Pope, 105 Tex. 440, 151 S.W. 525 (1912). Defendants admitted in their pleading that the contract was calling for personal services and skill in "exploration of the real values" of the property.

Defendants' first point of error is overruled.

Judgment of the trial court is affirmed.