**Charles N. WADE, et ux., Appellants,**

v.

**L. Holt MAGEE, et al., Appellees.**

**No. 08–81–00277–CV.**

Court of Appeals of Texas, El Paso.

Aug. 18, 1982.

Rehearing Denied Sept. 15, 1982.

Kerr, Fitz-Gerald & Kerr, Ted M. Kerr, Midland, for appellants.

L. Holt Magee, Monahans, for appellees.

Before STEPHEN F. PRESLAR, C.J., and OSBORN and SCHULTE, JJ.

OPINION

OSBORN, Justice.

Charles N. Wade and wife appeal from a permanent injunction which prohibits them from building a garage or carport on a portion of a city lot which adjoins the lot where their home is located because of building restrictions which cover this particular subdivision of Monahans, Texas.

In January, 1960, Paul Carr, as owner, platted and placed certain building restrictions upon Blocks 7, 8, 9 and 10 of Park

Addition and the West One-half of Blocks 8 and 9, Bellaire Addition to the City of Monahans. The City Council accepted the dedication of streets and annexed the land into the city. Restriction No. 6 provides:

All garages and carports shall be large enough to accommodate two automobiles, and such garages and carports which are located on corner lots must have side or rear entrances thereto.

In September, 1976, Charles and Annette Wade purchased Lots 4, 5 and 6 in Block 10, Park Addition to the City of Monahans. Lot 6 was a corner lot. The following month, they sold the South 94 feet of Lot 5 and the North 6 feet of Lot 4 in Block 10. They retained all of Lot 6 and the adjoining North 16 feet of Lot 5. They now own and occupy the house and garage located on Lot 6. In late 1979 or early 1980, they started construction of a 12 foot by 40 foot structure, located on the North 16 feet of Lot 5, which was to be used as a garage for an Airstream trailer and pickup.

Appellees, who are other property owners in the subdivision, obtained a temporary injunction in January, 1980, to stop construction. That injunction was made permanent in October, 1981, upon the basis that the Appellees had in effect made the North 16 feet of Lot 5 a part of Lot 6 through their joint ownership, and that the proposed garage was on a corner lot and it did not have a side or rear entrance.

■ This appeal presents the single issue as to whether the North 16 feet of Lot 5 is a corner lot by reason of the fact that Appellants who own Lot 6, which is a corner lot, also own the adjoining North 16 feet of Lot 5. We hold that although Lot 6 is a corner lot, no part of Lot 5 is a corner lot; thus, the restriction in question is not applicable.

The restrictive covenants in question recite that the attached plat is made a part of the restrictive covenants and said plat shows exact measurements and dividing lines for each numbered lot and block in the subdivision. The meaning of the term "lot" was before the court in *Wall v. Ayrshire Corporation*, 352 S.W.2d 496 (Tex.Civ.App.

—Houston 1961, no writ), where the court said:

Appellant urges that the term "lot" is of variable meaning and can include acreage. The term can have different connotations, depending upon all facts and circumstances attending its use. Where it is used as here in connection with a contemplated platting of urban acreage into a city residential subdivision, we think it can have but one meaning and that is it is a fractional part of a block limited by fixed boundaries on an approved recorded plat. *Mawson-Peterson Lumber Company v. Sprinkle*, 59 Wyo. 334, 140 P.2d 588, 147 A.L.R. 1089; *Ontario Land & Improvement Co. v. Bedford*, 90 Cal. 181, 27 P. 39; *Town of Greendale v. Suit*, 163 Ind. 282, 71 N.E. 658; *Green Avenue Apartments v. Chambers*, Tex.Civ.App., 239 S.W.2d 675, no writ history.

The holding in that case was followed in *Calvin Reid Construction Company, Inc. v. Coleman*, 397 So.2d 145 (Ala.Civ.App.1981) where the court wrote:

In short, an acre is a unit of measurement that is suitable for use in describing one portion of a large unsubdivided, undeveloped, tract of land. On the other hand, the term "lot," when used in connection with a contemplated platting of acreage into a residential subdivision, means a fractional part of a block limited by fixed boundaries on an approved recorded plat. *Wall v. Ayrshire Corp.*, Tex. Civ.App., 352 S.W.2d 496 (1961).

■ In addition, we are bound by those holdings that restrictive covenants are to be construed strictly against the person seeking to enforce them, and that all doubts must be resolved in favor of the free and unrestricted use of one's property. *Baker v. Henderson*, 137 Tex. 266, 153 S.W.2d 465 (1941); *Gilbert v. Shenandoah Valley Improvement Association*, 592 S.W.2d 28 (Tex. Civ.App.—Beaumont 1979, no writ).

*Detweiler v. Derry Township Municipal Authority*, 29 Pa.Cmwlth. 277, 370 A.2d 810 (1977), upon which Appellees rely, is not controlling. It is a municipal tax case and

does not involve a restrictive covenant applicable to particular lots in a subdivision.

We sustain Appellants' two points of error and order the permanent injunction dissolved.

STEPHEN F. PRESLAR, Chief Justice, dissenting.

I respectfully dissent and would affirm the judgment of the trial court granting a permanent injunction in this matter.

As I view this case, the problem arises from the fact that inside lots and corner lots are treated differently under the covenants of the subdivision. Appellants seek to occupy a corner lot under the restrictions applicable to inside lots; they would evade the covenants running with their land by changing property lines. The majority has held that "although Lot 6 is a corner lot, no part of Lot 5 is a corner lot; thus, the restriction in question is not applicable." Thus, the 16 foot strip of Lot 5 is given the status of a "lot" by application of the restrictions applicable to inside lots. Appellants have their house on, occupy, and use Lot 6, a corner lot, in the normal contemplated use of a lot in a residential subdivision; they have, in effect, enlarged that lot by adding a 16 foot strip. In allowing the covenants and restrictions applicable to that 16 foot strip to control Appellants' use of the corner lot, the majority is allowing the tail to wag the dog. Under the covenants, an inside lot is one thing, and a corner lot is another, and Appellants in their use of a corner lot must do so in accordance with the covenants applicable to corner lots.

The basic concept underlying the use of restrictive covenants is that each purchaser in a restricted subdivision is subjected to the burden and entitled to the benefit of a covenant. *Davis v. Huey,* 620 S.W.2d 561 (Tex.1981). I find the majority opinion contrary to this basic concept for it allows Appellants to enjoy the benefits of the corner lot covenants but not the burdens. I find that this holding violates the mutuality of obligations central to the purpose of restrictive covenants.

I am unable to agree that the majority opinion can be upheld under the doctrine of strict construction and resolution against the person seeking to enforce restrictive covenants. "Restrictive covenants relating to the use of land were given rather strict construction in the early stages of their development. However, the modern tendency favors their use and the enforcement of their provisions to the use of the writ of injunction." Lowe, *Remedies,* sec. 27, pp. 53–56 (6 Texas Practice 2d ed. 1973). *Inwood North Homeowners' Association, Inc. v. Meier,* 625 S.W.2d 742 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ). The matter is thoroughly discussed in the final version of the much litigated case of *Davis v. Huey,* 620 S.W.2d 561 (Tex.1981). Enforcement was denied on grounds that there was a lack of notice of the restriction, a matter not present in the case before us. But, as to the law which I think is applicable to the case before us, the court said:

"In *Curlee v. Walker,* 112 Tex. 40, 244 S.W. 497, 498 (1922), quoting with approval from *Hooper v. Lottman,* 171 S.W. 270, 272 (Tex.Civ.App.—El Paso 1914, no writ), the court stated several rules pertaining to covenants in a subdivision:

So the general rule may be safely stated to be that where there is a general plan or scheme adopted by the owner of a tract, for the development and improvement of the property by which it is divided into streets and lots, and which contemplates a restriction as to the uses to which lots may be put, or the character and location of improvements thereon, to be secured by a covenant embodying the restriction to be inserted in the deed to purchasers; and it appears from the language of the deed itself, construed in the light of the surrounding circumstances, that such covenants are intended for the benefit of all the lands, and that each purchaser is to be subject thereto, and to have the benefit thereof, and such covenants are inserted in all the deeds for lots sold in pursuance of the plan, a purchaser and his assigns may enforce the covenant against any other purchaser,

and his assigns, if he has bought with actual or constructive knowledge of the scheme, and the covenant was part of the subject matter of his purchase."

Indicative of the current status of the law in this area is the fact that in 1977 the Legislature enacted Article 1293b, Tex.Rev. Civ.Stat.Ann., providing that in an action based on a breach of a restrictive covenant pertaining to real property, a prevailing party shall recover reasonable attorney fees in addition to his costs and claim. There was no claim for attorney fees in the case before us, and reference to the statute is merely to show the current trend in the law.

For the reasons stated, I would affirm the judgment of the trial court.