FANCHER SARCHET, *Plaintiff and Respondent,*
vs.
H. N. ROACH and HILDA D. ROACH, as Trustees
and Directors of Otto Lumber Company, a corpora-
tion, dissolved, *Defendants and Appellants.*

(No. 2324; November 6th, 1945; 163 Pac. (2d) 185)

For the Defendants and Appellants, the cause was submitted on the brief and also oral argument of G. R. McConnell, Laramie, Wyoming.

For the Plaintiff and Respondent, the cause was submitted on the brief and also oral argument of J. R. Sullivan, Laramie, Wyoming.

100

OPINION

BLUME, Chief Justice.

The plaintiff, respondent herein, brought this action in the district court of Albany County against the defendants, appellants herein, to recover the sum of $2000 due to him from the defendants herein for certain ties and lumber removed and sold by the defendants or the Otto Lumber Company for the plaintiff. The defendants consist of H. N. Roach and Hilda Roach, trustees for the Otto Lumber Company, which has been dissolved. The defendants contested the right of plaintiff to recover at this time on the ground that the area on which the ties and lumber had been cut had not been cleaned and that the duty to do so rested upon the plaintiff. The trial court found in favor of the plaintiff and from the judgment entered the defendants have appealed to this court. The parties will be referred to herein as in the court below, and reference to the defendants must be understood as including the Otto Lumber Company. The essential facts in chronological order are substantially as follows:

The Otto Lumber Company bought standing timber from the United States Government in the Roosevelt National Forest. It agreed to harvest the timber in a proper manner, covenanting, among other things, to clean up the area in which the timber was cut, to dispose of the buildings erected thereon, to burn all brush and debris, to cut all timber designated to be cut and to leave the area in a satisfactory condition as approved by the officials of the Forest Service. These covenants will be referred to hereafter as the duty to clean up the area or as clean-up. On June 6, 1940, the Otto Lumber Company sold part of the timber so bought to one Elmer Breckenridge, namely, the timber located in what are designated as Sections 15 to 22 of the Roosevelt National Forest. The contract recites that the timber is the property of the United States, and that the Otto Lumber Company has a timber-sale agreement with the United States, which was entered into on June 2, 1939. Breckenridge agreed to harvest the timber and trees in complete accordance with the laws of the United States, the rules and regulations of the Forest Department and the terms set forth in the timber-sale agreement between the United States and the Otto Lumber Company. Breckenridge agreed to pay to the Otto Lumber Company ten cents per standard-gauge railroad tie and two dollars and fifty cents per one hundred board feet for all sawed logs. The agreement provided: "The party of the first part (The Otto Lumber Company) hereby reserves and retains a vendor's lien on the timber and trees hereby sold and conveyed to secure the payment of the unpaid balance of the purchase money, and it is agreed by and between the parties hereto that the lien herein reserved shall continue to attach to the logs, trees, and lumber after said timber and trees shall be cut wherein situated." The agreement further provided that if Breckenridge shall fail to harvest the timber in the proper manner as provided, the contract

might be forfeited. The contract stated further: "To insure the party of the first part of the faithful performance of all of the terms of this agreement the party of the second part shall pay an additional two cents per tie as security for the performance of this contract in all its particulars. It is further agreed that the party of the first part will return two cents per tie upon completion of said contract as soon as passed and accepted by the Forest Service." The contract was made non-assignable and expired at the end of the season of 1940-41, but Breckenridge was given the privilege of securing additional timber. The testimony of H. N. Roach shows that the contract was subsequently extended upon the identical terms as the original contract, and sections 2 and 3 of the Roosevelt National Forest were embraced therein. It appears that these sections were not yet cleaned up at the time of the trial herein and no release for such cleaning had then been issued by the officials of the Forest Service, and it is the lack of this clean-up which has caused the controversy herein.

Subsequently Breckenridge became involved in financial difficulties. One L. F. Toliver took over the Breckenridge contract, apparently on behalf of the creditors of Breckenridge. The Otto Lumber Company objected to any assignment of the contract, and so Toliver procured a power of attorney from Breckenridge and operated under the contract in that manner. He also gave to the lumber company a guaranty for the payments due to the latter. The power of attorney to Toliver expired in February 1943. He then apparently severed or was compelled to sever his connection with the Breckenridge contract and the plaintiff then stepped in on behalf of the creditors of Breckenridge and attempted to collect whatever amounts he could on their behalf. It appears that about 4000 ties and some additional lumber had been cut when the power of

attorney of Toliver expired and it is these ties and lumber which are involved in the contract subsequently entered into between the plaintiff and the Otto Lumber Company. It may also be mentioned that Toliver then wanted the guaranty which he had given to the Otto Lumber Company to be released. The request for that release and the refusal to give it are mentioned in the letters exchanged between the plaintiff and the Otto Lumber Company hereinafter mentioned, but inasmuch as that matter is immaterial herein, no further special reference thereto needs to be made hereafter.

Sometime in the Spring of 1943 the plaintiff on behalf of the creditors of Breckenridge began negotiations, at first oral, with Breckenridge to turn over the ties and lumber to him. He also commenced negotiations, at first oral, with the Otto Lumber Company to haul the ties and sawed lumber out of the forest, to be sold, the net proceeds to be turned over to the plaintiff after paying the Otto Lumber Company the expenses and the amounts due to it for the ties and lumber under the contract with Breckenridge. The plaintiff wanted the Otto Lumber Company to remove and sell the ties because he himself had no facilities with which to do so. On June 12, 1943, plaintiff wrote to Breckenridge among other things as follows: "I have made a deal with Mr. Roach under the terms of which he is to get the ties and the sawed lumber and sell them in Laramie at the best price obtainable, deducting 14 cents per tie for the ties sold and remit the proceeds to me for distribution * * * I have had several talks with Mr. Roach and he tells me that he has no claim against you personally, but he also tells me that he has Toliver's written guarantee to protect him in money that he had already paid out in connection with the business during the time Toliver was operating * * * it is going to be possible to get into the woods to get the ties out within 10 days, and I think we should

move at once." On June 19, 1943, Breckenridge wrote to plaintiff as follows: "Please be advised that you have my permission to go ahead in any or all transactions. Hoping this ends the entire business. If there is any small amount of money to be paid, pay the amount and I will pay you when I come down there as I expect to be in Ft. Collins sometime in July." Four days thereafter, namely, on June 23, 1943, plaintiff wrote to H. N. Roach of the Otto Lumber Company ( after mentioning the Toliver matter) as follows: "You may consider this letter your authority to get out the ties and sawed lumber. Sell the ties and the lumber at the best price obtainable. Retain your stumpage on the ties moved and sold, your expenses incurred in moving and selling the ties and lumber, the balance to be remitted to me. You spoke over the phone today of 12½ cents per tie stumpage but my previous recollection is that you have said 14 cents per tie. My information is there are about 4000 ties in the woods and about 2 loads of lumber. I will not come to Laramie until I hear from you. Phone me as soon as possible." On July 13, 1943, the plaintiff went from Ft. Collins to Laramie and saw Mr. Roach of the Otto Lumber Company. After considerable conversations, Mr. G. R. McConnell, counsel for the defendants, was called in and he then dictated the following letter which was signed by the Otto Lumber Company, per H. N. Roach president, as follows: "Supplementing our conversation of today and reviewing your letter of June 23, 1943, I wish to advise * * * representing the Otto Lumber Company I accept your authority to remove all ties and sawed lumber and sell same at the best price obtainable and will use due diligence in this work. I will not guarantee any definite amount of material or that the amount removed will tally with any records kept by L. F. Toliver or his agents. We will give you a copy of the inspection by the Union Pacific Railroad. From the money obtained

we will deduct the costs plus a 10 cents per tie overhead and 10 percent on lumber, stumpage, hauling, and incidental expenses. The acceptance of this offer is based upon your letter of June 12, 1943 to Elmer Breckenridge and his reply of June 19, 1943, giving you full authority in the matter."

It seems that a Mr. Kean, one of the main creditors of Breckenridge, had at that time a bill of sale from Breckenridge for the foregoing ties and lumber, but that bill of sale was destroyed and on June 20, 1943, Breckenridge in place thereof, gave a bill of sale for the material mentioned to the plaintiff herein. Plaintiff testified that he had authority from Breckenridge to deal with the property long before the date last mentioned.

In accordance with the contract entered into between plaintiff and the Otto Lumber Company, the latter removed and sold the ties and lumber in controversy, realizing thereon, after deducting the authorized amounts, the sum of $2997.70. Defendant rendered a statement to the plaintiff on November 8, 1943, but in the name of Elmer Breckenridge, stating a credit to Breckenridge for $134.11 as per balance due previously and apparently arising out of transactions in 1942, and giving further credit in the sum of $2997.70 for the ties removed and sold in June, July, August, and September of that year less expenses, making a total credit of $3131.81. The statement debited Breckenridge with $2000 for "hold-back for clean-up as required by the Forest Service", leaving a balance of $1131.81. A check in favor of Breckenridge, accompanying the statement was sent for this balance which the plaintiff according to his testimony received. It was paid, endorsed by the plaintiff on behalf of Breckenridge. Defendants refused to pay the $2000 or any part thereof until the Forest Service should give a

release showing that the clean-up above mentioned had been fully made. Thereupon the plaintiff brought this action to recover the sum of $2000 above mentioned. It might be added that the cost of the clean-up herein mentioned does not appear. None of the witnesses in the case was willing to give an estimate thereof. One of the witnesses stated, that in view of the fact that not all the trees in the area were cut, the clean-up might be made at a profit.

Plaintiff claims that he is the owner of the ties and lumber in question and that in view of the fact that the defendant agreed that he would remove and sell this property and remit the net proceeds to him, he is entitled to recover herein. Defendants on the other hand claim that under the facts outlined above, the plaintiff is only the agent of Breckenridge and because of that fact he is not the real party in interest and is accordingly, not entitled to sue herein and, second, that he cannot recover what is due, any more than Breckenridge could, until the contract with reference to the clean-up has been complied with. We do not think there is any merit in the first of these contentions. Even if the plaintiff was the agent of Breckenridge or is, in fact, the agent of anyone else, the contract was entered into between the plaintiff and the Otto Lumber Company and he is accordingly entitled to sue thereon, under the express provisions of Section 89-503, Revised Statutes of 1931, which reads as follows:

"An executor, administrator, or guardian, a trustee of an express trust, a person with whom, or in whose name, a contract is made for the benefit of another, or a person expressly authorized by statute, may bring an action without joining with him the person for whose benefit it is prosecuted; and officers may sue and be sued in such name as is authorized by law."

It is strenuously insisted by counsel for the defendants that the facts in this case show that the plaintiff

was but the agent of Breckenridge; that accordingly plaintiff's right is subject to the equities existing between Breckenridge and defendant and that since Breckenridge has not performed his part of the contract, plaintiff's action is premature. We do not think that the trial court was bound to find that plaintiff was Breckenridge's agent. The contract herein was made, as already stated, between plaintiff and the Otto Lumber Company. Presumably therefore plaintiff was acting for himself. It is said in 3 C. J. S. 252 that: "Generally speaking, the law indulges in no presumption that an agency exists. It is sometimes asserted that agency is never presumed." Hence the agency of plaintiff for Breckenridge cannot be presumed nor had the Lumber Company or defendants the right to presume it. The proceeds of the contract were to be remitted to the plaintiff. Plaintiff's testimony is clear and unequivocal that he was not the agent of Breckenridge but was trustee for the latter's creditors. These facts are controlling on the point in dispute in the absence of countervailing facts and circumstances. We do not think that such countervailing facts or circumstances exist so as to compel this court to reverse the trial court. Counsel for the defendants lays much stress on the fact that the bill of sale to plaintiff was dated July 20, 1943, seven days later than the letter of the defendant accepting the duty to remove and sell the ties and the lumber, and he argues that this shows that the plaintiff covertly attempted to change the status of agency to that of owner, and thus escape the duty resting upon Breckenridge to clean up the area. However, the record gives a reasonable explanation of that. Kean, one of the principal creditors, already had a bill of sale. The plaintiff, representing all the creditors, merely took Kean's place, taking the bill of sale in his own name. The letters between plaintiff and Breckenridge above set out and referred to in the Lumber Cor-

poration's letter of July 13, 1943, do not show that plaintiff was the agent of Breckenridge. They are at most equivocal as to the capacity in which the plaintiff was acting. Plaintiff testified that Breckenridge was merely cooperating in protecting the creditor's represented by plaintiff. The latter was not operating under the Breckenridge contract. He merely acquired a right to ties and sawed lumber left on the ground by Toliver. These ties and sawed lumber, coming from timber already cut, were personal property, and hence subject to a bill of sale. Stockel vs. Elich, 112 Calif. App. 588, 297 P. 505; Case vs. Harrah, 253 Mich. 524, 235 N. W. 196; Austin vs. Brown, 191 N. C. 624, 132 S. E. 661; University of Vermont etc. vs. Wood, 104 Vt. 239, 158 Atl. 773. There was no reason accordingly to think that plaintiff's authority should be subject to the equities between Breckenridge and the defendants except as to the lien specifically reserved on the cut timber. There is no claim and no evidence that the Otto Lumber Company was deceived in believing that the plaintiff was the agent of Breckenridge. If it had been deceived it would seem that testimony to that effect would have been produced. The Otto Lumber Company knew that Breckenridge was in financial difficulties. He had ceased to operate under the contract with the Lumber Company for some time previous to 1943. Toliver acted under a power of attorney, but that gave the Lumber Company or the defendants no reason to think that the plaintiff's situation was the same, for Toliver operated in that manner only by reason of the fact that Otto Lumber Company would not let him operate under an assignment of the Breckenridge contract, and he in fact operated not in the interest of Breckenridge, but in his own interests or the interests of himself and other creditors of Breckenridge. In view of that fact, it is not likely that the Lumber Company, or the defendants, believed that Breckenridge had

stepped back into the position which he had occupied prior to his financial difficulties. Again the letter of June 12, 1943, written by plaintiff to Breckenridge, stated that the proceeds were to be sent to plaintiff "for distribution". The Otto Lumber Company was advised of that letter. The phrase "for distribution" is far from indicating that the proceeds were to go to Breckenridge.

The Otto Lumber Company enumerated the specific deductions which it would make after removing and selling the ties and the sawed lumber. It left out any amount to be deducted for cleaning up the area. The circumstances indicate that we can apply the rule of expressio unius est exclusio alterius 17 C. J. S. 730. The testimony of the plaintiff emphasizes the applicability of this rule herein, for he testified that the contract was made on the basis that no deduction would be made for cleaning up the area. "He had," he stated further, "no purpose in making the contract if the defendants had any claim against the ties." Furthermore, in the letter of June 12, 1943, of which the Lumber Company was advised, written by plaintiff to Breckenridge, plaintiff stated: "I have had several talks with Mr. Roach and he tells me that he has no claim against you personally." The Otto Lumber Company then knew that plaintiff expected that no deductions would be made for cleaning up the area. Hence, if the Lumber Company wanted to make any deductions on that account, it would have been important to so state in the letter of acceptance of July 13, 1943. Taking all the facts herein into consideration, we think there is substantial evidence in the case to uphold the trial court.

There seems, however, to be an error in the computation of the amount due. The net amount which arose out of the contract between plaintiff and the Otto Lumber Company is the sum of $2997.70. Plaintiff has not

contested that amount in any way as being incorrect. The statement which plaintiff received (made out in the name of Breckenridge) recites a prior credit balance in favor of Breckenridge in the sum of $134.11. So far as we can discover, that amount does not seem to have anything to do with the contract between plaintiff and the Otto Lumber Company, and in the absence of explanation, would seem to remain as a credit in favor of Breckenridge, subject to the equities between him and the defendants. Plaintiff pleaded that he received only the sum of $997.70 (which is $1131.81 less $134.11), and testified that the amount due him was $2000. At the same time he testified that he received the check of the defendants in the sum of $1131.81. He endorsed it and received the proceeds thereof, so that if the judgment of $2000 were to stand, he will have received in the absence of explanation, not $2997.70 due him but $3131.81, or $134.11 more than is due him. It would seem that in view of the fact that the defendants then took the position that the whole sum in their hands was subject to the equities between them and Breckenridge, and made their statement and the accompanying check in conformity therewith, and as it were, upon that condition, we are unable to perceive why the plaintiff should be entitled to credit part of the amount received, namely $134.11 to an account with which he had no concern, and credit only the balance on his own account. It is quite plain, and it must have been plain to the plaintiff, that the defendants did not intend to clear their books of any credit to Breckenridge and relieve him of all duties with reference to the clean-up in the face of the statement sent to plaintiff which showed the exact contrary, and from which it is manifest that the defendants intended to retain for their protection not only the sum of $134.11, but an amount many times that sum. So far as we are able to perceive, plaintiff had no right to hinder,

thwart or interfere with that intention except only as it affected his own rights. There is at least some doubt that the plaintiff should have accepted and appropriated the check received, if he was unwilling, as he was, to be bound by the implied condition mentioned in the statement which accompanied the remittance. The judgment herein, therefore, should be in the sum of $2997.70, less $1131.81, namely the sum of $1865.89, unless plaintiff can show that the $134.11 heretofore mentioned was returned to the defendants or the Otto Lumber Company. The judgment herein is modified accordingly, and as modified is affirmed with direction for further proceedings, if desired, as to the $134.11 heretofore mentioned. Costs will be taxed to defendants, except that no costs will be taxed for the briefs.

*Modified and Affirmed.*

RINER, J., and KIMBALL, J., concur.