H. A. TRUE, Jr., Appellant
(Plaintiff below),

v.

HI-PLAINS ELEVATOR MACHINERY,
INC., Appellee (Defendant and
Third-Party Plaintiff below),

v.

KINGMAN ELEVATOR AND MILL
SERVICE, INC. (Third-Party
Defendant below).

No. 4725.

Supreme Court of Wyoming.

April 10, 1978.

Rehearing Denied June 2, 1978.

Robert Stanley Lowe, Casper, signed the brief and appeared in oral argument on behalf of the appellant.

Richard S. Dumbrill, Jones & Dumbrill, Newcastle, signed the brief and appeared in oral argument on behalf of the appellee.

Before GUTHRIE, C. J., and McCLIN-TOCK, RAPER, THOMAS and ROSE, JJ.

RAPER, Justice.

This is an appeal by plaintiff-appellant, H. A. True, Jr. (hereinafter True), from a judgment against him in favor of defendant-appellee, Hi-Plains Elevator Machinery, Inc. (hereinafter Hi-Plains), on its counterclaim seeking to establish and foreclose a mechanic's lien for materials and supplies alleged to have been furnished by defendant for repairs and improvements to a feed

mill owned by plaintiff. The materials and supplies were alleged to have been furnished to third-party defendant, Kingman Elevator and Mill Service, Inc. (hereinafter Kingman), contractor. True and Hi-Plains were also granted personal judgments against Kingman on their respective third-party complaints. Kingman has not appealed from either of the judgments and is not a party in this appeal. The case was tried by the trial court without a jury.

The issues are: (1) Whether the findings of fact set forth in the judgment were proper; (2) Whether the trial court erred in finding that Hi-Plains and Kingman were neither engaged in a joint adventure nor an agency relationship; (3) Whether Hi-Plains, a foreign corporation, is barred from maintaining an action by counterclaim in the courts of Wyoming against one of its citizens on a claim arising out of contract performed in this state; (4) Whether the trial court erred in striking True's jury trial demand; and (5) Whether the judgment form was erroneous. We affirm but remand the case with directions to modify the judgment against True in accordance with § 29–22, W.S.1957, C.1965, in conformity with the holdings we shall express.

Hi-Plains is a Kansas corporation with its principal place of business in Salina, Kansas. Kingman is also a Kansas corporation, with its principal office in Kingman, Kansas. True is the owner and operator of the LAK Ranch in Weston County, Wyoming, the situs of the feed mill, including a one-acre tract [1] of land upon which it is situated that was subjected to foreclosure by the judgment of the district court.

The action was commenced on July 31, 1975, when True filed a complaint against Hi-Plains seeking $100,000.00 damages for impairment of True's title to the mill and disputed tract, a restraining order against Hi-Plains, foreclosing a purported mechanic's lien thereon and an order quieting title. The action was instituted as a result of an "Affidavit and Notice of Claim of Material-

man's Lien" filed by Hi-Plains. The slander of title claim was later dropped by amended complaint. Hi-Plains then filed its answer as well as a counterclaim, wherein it sought to establish and foreclose a mechanic's lien to secure payment for materials supplied for improvements to the feed mill. Hi-Plains also filed a third-party complaint against Kingman for the value of materials furnished to Kingman for use in the latter's contract with True to construct repairs and improvements to the feed mill.

True filed a reply to the counterclaim of Hi-Plains, and a third-party complaint against Kingman requesting joinder of the latter as an additional party to the action and demanding judgment against Kingman for any sums that Hi-Plains might recover from True and for costs of defending the counterclaim. Prior to trial, True moved to dismiss his complaint and amended complaint which was granted by order of court. He subsequently filed a motion for entry of summary judgment on the counterclaim, which was denied. On April 19, 1976, the case went to trial on the counterclaim of Hi-Plains against True, Hi-Plains' third-party action against Kingman and True's third-party claim against Kingman. The facts which we shall now narrate were developed by the evidence.

In 1972, Hi-Plains contracted with True to build an elevator and expand the feeding facilities of the latter's farm situate in the area of Wheatland, Wyoming. As that Wheatland project was nearing completion, True's representative, William Shepard, telephoned Wilbur Leuhring, president of Hi-Plains, in the early part of 1973 and arranged for Leuhring to travel to Wyoming to look over a feed mill at the LAK Ranch near Newcastle in Weston County. After Leuhring made his inspection of the premises on March 7, 1973, he submitted a bid to complete the proposed changes and improvements to the feed mill.

True did not respond to the bid until Shepard called Leuhring sometime in the

---

[1]. Section 29–4, W.S.1957, C.1967, limits the lien for labor and material on land to the extent of one acre on the improvements there located.

spring or summer of 1973 to inquire whether Hi-Plains could start the project. Leuhring informed Shepard that Hi-Plains had sold its construction business, and its successor was unable to perform the work contemplated by the bid. In response to Shepard's inquiry, Leuhring suggested Kingman as a company that might be interested in bidding on the project. In the early part of August, 1973, Leuhring chartered an airplane and flew with B. C. Winkle, President and manager of Kingman, from Kansas to the LAK Ranch in Wyoming, where both inspected the feed mill for the purpose of developing cost quotations on the project. On the return flight to Kansas, Winkle indicated that Kingman would submit a bid on the LAK Ranch project. Leuhring and Winkle subsequently collaborated in developing a list of equipment needed by Kingman for the job, the prices of which were to be quoted by Hi-Plains. Hi-Plains submitted the quotation to Kingman on August 16, 1973.

It was debatable whether True would give his approval to the LAK project, so a substantial time period elapsed before negotiations with Kingman were continued. On May 6, 1974, Kingman prepared and submitted a proposal to True which was subsequently accepted. Hi-Plains, in the meantime, was requested by Kingman to recalculate and update the quotation for materials to be used in the project. Hi-Plains complied by sending a quotation directly to Kingman. The written contract between Kingman and True provided that the LAK project would be performed by Kingman for a consideration of $29,379.73, labor, materials, freight and sales tax included. The contract also provided that additional work would be performed at the rate of $13.50 per-man-hour, plus $12.50 daily expenses for each man employed.

On August 16, 1974, Hi-Plains sent an invoice to Kingman for materials and supplies to be used in connection with the LAK project, and Kingman commenced work under the terms of the contract the day after Labor Day in September, 1974. The construction contract was completed as of November 6, 1974. True made final payment to Kingman on the contract on December 27, 1974.

While the original LAK project was in progress, True and Kingman entered into another written agreement on October 24, 1974, for the installation of a vibrating screen for the mill. While awaiting its arrival, some additional work was performed by Kingman's workmen, consisting of additional repairs, alterations and modifications to the feed mill. This work was performed pursuant to oral agreement, but billed by Kingman under the extra-work provision of the May 6, 1974, contract. Hi-Plains shipped additional materials and parts for the extra work up to January 10, 1975.

When the screen finally arrived, Kingman's workmen dropped it during installation. Kingman went out of business before a new vibrating screen arrived. It was eventually installed by another contractor. True paid off Kingman's billings for the additional work on February 4, 1975.

Prior to the final payment on the May 6, 1974, contract, Leuhring called Shepard at the end of November or the first part of December, 1974, and advised him that Hi-Plains had not been paid for the materials that it had shipped Kingman for the LAK project. Leuhring requested Shepard to "make out a two-party check, or make sure that we had been paid before he paid the balance due to [Kingman]." Shepard responded that it was against True's policy to put two names on a check. After this call, an affidavit was eventually obtained from Winkle, as president of Kingman, which purported to show that any amount due for labor and materials used in the LAK project and which might constitute lienable items against the property of True had either been paid or would be fully satisfied when the final installment was paid by True on the contract. The final payment on the contract was subsequently made to Kingman, but Hi-Plains was never paid on the invoices which applied to the LAK job. Any payment that Kingman made to Hi-Plains was credited only to specific invoices,

Kingman directed be paid. The total owing to Hi-Plains for materials and supplies furnished to Kingman on his agreement with True was $7,408.01.

On March 15, 1975, Hi-Plains, not having received any payment, notified True and Kingman, as required by § 29–12, W.S.1957, C.1967, of its intent to file a materialman's lien on True's property in Weston County, Wyoming. An "Affidavit and Notice of Claim of Materialman's Lien" was filed in the county clerk's office in Weston County on April 3, 1975. True brought his cause of action before Hi-Plains could file suit to establish and foreclose the mechanic's lien.

On June 4, 1976, the trial court entered judgment in favor of Hi-Plains, against True, declaring a first and valid lien in the amount of $7,895.05 (including interest and costs) on True's feed mill and the land upon which it is situated to the extent of one acre. The judgment further ordered execution upon the property in satisfaction of the lien. In addition, Hi-Plains was awarded judgment in the amount of $8,019.99 (including interest and costs) on its third-party claim against Kingman. True was awarded judgment against Kingman on his third-party action in the amount of $7,895.05. This appeal followed.

■ At the close of the trial, counsel for Kingman made a request for special findings of fact and conclusions of law. The trial court denied the request as untimely. When counsel proposed that all parties to the action stipulate to entry of special findings and conclusions of law, the court advised of its objection to such a proposal. Appellant-True, nevertheless, contends that only general findings in the judgment are improper. Rule 52(a), W.R.C.P., does not require the trial court to make separate findings except on request made before introduction of evidence. *Hendrickson v. Heinze*, Wyo.1975, 541 P.2d 1133. The trial court properly denied counsel's request for special findings and conclusions.

■ True further challenges some of the findings as not supported by the evidence. Since the questions presented by True's argument entail largely factual determinations to be made only by the trier of fact, we feel monotonously compelled to set out the often-repeated but necessary rules which an appellate court must keep in mind in its review. We must examine the evidence in a light most favorable to the prevailing party and resolve all conflicts in the testimony and exhibits in its favor. *P & M Cattle Company v. Holler*, Wyo.1977, 559 P.2d 1019, 1024; West's Wyoming Digest,

Unless the findings of the trial court are clearly erroneous or contrary to the great weight of evidence, they will not be disturbed on appeal. *Wyoming National Bank of Casper & First National Bank of Casper v. Security Bank & Trust Co.*, Wyo.1977, 572 P.2d 1120; *Willis v. Asbury Transportation Co.*, Wyo.1963, 386 P.2d 934, 937. We cannot properly substitute our judgment for that of the trial court on findings of fact. *Zullig v. Zullig*, Wyo.1972, 502 P.2d 198. Even in the absence of special findings of fact, a general finding and judgment for the successful party carries with it every finding of fact which can reasonably and fairly be drawn from the evidence. *Wyoming National Bank of Casper & First National Bank of Casper v. Security Bank & Trust Co.*, supra; *Zitterkopf v. Roussalis*, Wyo.1976, 546 P.2d 436, 437.

True challenges the trial court's finding that the evidence did not establish the existence of a joint adventure between Hi-Plains and Kingman or of an agency relationship between the two entities. As will be shown later, a finding that either of these two relationships existed between Hi-Plains and Kingman was necessary to establish the critical link in True's theory that Hi-Plains was barred from affirmatively seeking to foreclose on the mechanic's lien.

■ Joint adventures, commonly referred to as joint ventures, are a species of and are governed by the law of partnerships. *P & M Cattle Company v. Holler*, supra at 1021.[2]

---

**2.** An analysis of the interrelationship between a joint adventure and a partnership is found in *P & M Cattle Company v. Holler*, supra, at 1021:

"In Wyoming, a joint adventure partakes of the nature of a partnership and is governed substantially by the same rules of law, the

Thus, we are free to examine the law of partnerships in our handling of this issue.

■ In the case before us there is no evidence in the record of an express agreement between Hi-Plains and Kingman to associate together in the form of a joint adventure. The only documentary evidence which casts light on their relationship is a series of invoices sent by Hi-Plains to Kingman for the materials furnished for Kingman's use in the LAK project. A partnership or joint adventure, however, does not necessarily evolve out of a written agreement, but may be inferred from the conduct, surrounding circumstances and the transactions between the parties. *P & M Cattle Company v. Holler*, supra, at 1022; *Wyoming-Indiana Oil & Gas Co. v. Weston*, 1932, 43 Wyo. 526, 7 P.2d 206, 209, 80 A.L.R. 1037, 1044. While there is no standard formula upon which the existence of a partnership must rely, the facts and circumstances of the association between the parties are controlling. *P & M Cattle Company*, supra.

■ The Uniform Partnership Act, § 17–195, et seq., W.S.1957, C.1965, defines a partnership as "an association of two or more persons to carry on as co-owners *a business for profit.*" (Emphasis added.) § 17–200(1). This section has been interpreted as requiring the parties to agree to share in some way in the profits and losses of the business venture. *Chaiken v. Employment Security Commission*, Del.Sup. 1971, 274 A.2d 707, 710. It is the generally accepted rule that a partnership or a joint adventure cannot be inferred when the understanding with reference to the undertaking does not contemplate a mutual promise to share, in the fashion agreed upon, in the profits derived from the venture and the losses sustained in its operation. *Jones v. Taylor*, Mo.App.1966, 401 S.W.2d 183, 187; *Carey v. Humphries*, 1961,

171 Neb. 578, 107 N.W.2d 20, 22; *In re Wells' Will*, 1971, 36 A.D.2d 471, 321 N.Y. S.2d 200, 206; *Mislosky v. Wilhelm*, 1971, 130 Vt. 63, 286 A.2d 267, 271. The absence of such a mutual interest is conclusive evidence that a partnership or joint adventure does not exist. *Carey v. Humphries*, supra; *In re Wells' Will*, supra. As True conceded in oral argument, this indispensable element of a joint adventure was missing in the transactions conducted between Hi-Plains and Kingman. The argument that their relationship in reference to the LAK job was a joint adventure cannot be accepted under the surrounding circumstances of this case.

True argues in the alternative that, taking into consideration all of the circumstances and facts of the entire transaction, there was evidence from which a fact finder would find the existence of an implied agency between Hi-Plains and Kingman. In other words, True dealt with Kingman in the capacity of an agent on the behalf of Hi-Plains. Preparatory to a review of the evidence on this issue, we shall probe the applicable law of agency.

■ When the relationship of principal and agent is in issue, the party alleging agency has the burden of providing both the existence and nature thereof. *O'Brien v. General Motors Acceptance Corporation*, Wyo.1961, 362 P.2d 455; *Rodgers v. Arapahoe Pipe Line Co.*, 1959, 185 Kan. 424, 345 P.2d 702; 3 C.J.S. Agency § 491b, p. 385. The law engages in no presumption that an agency exists. *O'Brien v. General Motors Acceptance Corporation*, supra; *Sarchet v. Roach*, 1945, 62 Wyo. 97, 163 P.2d 185. An agency relationship is not dependent upon an express agreement of the parties, but may be implied from the words or conduct of the parties, depending upon the circumstances. *Popejoy v. Eastburn*, 1950, 241

principal distinction being that a joint adventure usually relates to a single transaction, though it may be continued over a period of years. *Eblen v. Eblen*, 1951, 68 Wyo. 353, 234 P.2d 434. Even though a joint adventure and a partnership are not identical, the relationship of co-adventurers is controlled large-

ly by the law of partnership. *Goldberg v. Miller*, 1939, 54 Wyo. 485, 93 P.2d 947, reh. den. 54 Wyo. 499, 96 P.2d 570; *Hoge v. George*, 1921, 27 Wyo. 423, 200 P. 96, 18 A.L.R. 469; *Wood v. Western Beef Factory, Inc.*, 10 Cir. 1967, 378 F.2d 96. * * *"

Iowa 747, 41 N.W.2d 764, 768; *Greep v. Bruns*, 1945, 160 Kan. 48, 159 P.2d 803; *Busby v. Walker*, La.App.1955, 84 So.2d 304, 307. 2A C.J.S. Agency § 52, states the following test at pp. 623–625:

> " * * * The law creates the relationship of principal and agent if the parties, in the conduct of their affairs, actually place themselves in such position as requires the relationship to be inferred by the courts, and if, from the facts and circumstances of the particular case, it appears that there was at least an implied intention to create it, the relation may be held to exist, notwithstanding a denial by the alleged principal, and whether or not the parties understood it to be an agency.
>
> "On the other hand, where it does not appear that there was any express or implied intention to create the relation, it will not be held to exist, as where it appears that the agent was acting on his own behalf." (Footnotes omitted.)

An implied agency must be based on facts provable by reasonable deductions or conclusions drawn from other facts and circumstances, and may be provable by reference to prior habits or course of dealings between the parties wherein the agent has repeatedly been permitted to perform similar acts in the past. *Busby v. Walker*, supra, at 307; *Weller v. Speet*, 1936, 275 Mich. 655, 267 N.W. 758, 759; *Frank v. Board of Education of Jersey City*, 1917, 90 N.J.L. 273, 100 A. 211, 213.

In designing his implied agency theory, True relies heavily on the pattern of operations which Hi-Plains had conducted over a period of years with Kingman and other contractors. The evidence in the record shows that Hi-Plains had transacted business with Kingman for approximately three years. Hi-Plains did not have sales offices in any of the states in its sales area, but did employ four salesmen who would scout leads calling for installation of elevator machinery. When a lead developed, Hi-Plains generally would get any one of 50 contractors, such as Kingman, to contract for performance of the job so that it could furnish the machinery. In its dealings with Kingman, representatives of Hi-Plains, usually salesmen, would travel with Kingman's representative to talk with a prospective customer, inspect the potential project and develop a quotation, consisting of materials and labor costs anticipated for the job.

While in most cases Hi-Plains would refrain from signing contracts for projects in which it would bring in a contractor, it did on occasion, if essential to sell its equipment. In such instances, Hi-Plains would prepare the bid with the contractor it chose to do the job, and the contractor would subsequently perform the work after Hi-Plains got the contract. Even though Hi-Plains and Kingman engaged in similar transactions on three prior occasions, most of their dealings involved transactions wherein Hi-Plains would help formulate the bid on the project and supply the materials it could to Kingman, who contracted individually for the job.[3] Hi-Plains never overtly or otherwise, designated Kingman as its agent during the time period in which they conducted business between each other.

The objective of the aggressive fashion in which Hi-Plains sought out and developed leads on potential projects was to develop a steady market for selling its machinery and equipment. This existence of prior dealings with Kingman, however, could not provide the sole basis for finding under the facts of the entire transaction in this case that an agency relationship can be implied between Hi-Plains and Kingman. Even though the inference may be drawn from the evidence of prior course of dealing that Hi-Plains had repeatedly collaborated with Kingman to engage in contracts involving the installation of elevator machinery, the fact finder, nevertheless, must be satisfied that the elements of agency exist in the context of the transaction at issue.

---

3. During the years in which Hi-Plains and Kingman transacted business, Kingman purchased a substantial amount of equipment from Hi-Plains—over $500,000.00 worth according to Leuhring's estimate or over $1,500,-000.00, according to Winkle's.

 1 Restatement of the Law 2d, Agency, § 1, 1957, p. 7, defines the essential elements of an agency relationship as a legal concept as follows:

"Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."

Thus, one of the required factual elements of an agency is "the understanding of the parties that the principal is to be in control of the undertaking." Id. § 1, comment beginning at p. 8. Perhaps the most essential test in determining the existence of an implied agency is the right of the principal to control the conduct of the agent or the actual exercise of such control. *Automotive Finance Co. v. Kesk, Inc.*, La.App.1967, 200 So.2d 136, 139; *Krom v. Sharp and Dohme*, 1958, 7 A.D.2d 761, 180 N.Y.S.2d 99, 101; *Toms v. Delta Savings & Loan Ass'n*, 1955, 162 Ohio St. 513, 124 N.E.2d 123; 2A C.J.S. Agency supra, § 52 at p. 626; 3 Am.Jur.2d, Agency, § 2 at pp. 419–420. There can be no agency relationship unless the factual element of control is present. 2A C.J.S. Agency, § 6, pp. 560–562, and cases cited in note 25 at p. 561.

 The record demonstrates that True failed to sustain his burden of proving the existence of a principal to and agent relationship between Hi-Plains and Kingman. True was the moving party first initiating negotiations regarding the LAK project. When it became apparent that Hi-Plains would be unable to perform the construction phase of the job, Shepard asked Leuhring to suggest the name of a contractor. Leuhring not only recommended Kingman but visited the LAK Ranch with Kingman's president to inspect the project and develop cost quotations. Hi-Plains was responsible for providing quotations for only the materials phase of the project and submitted its cost projections directly to Kingman.

Kingman eventually contracted with True and constructed the improvements and repairs on the feed mill. Hi-Plains was not a party to this contract and did not participate in its negotiations. No employee of Hi-Plains either supervised or aided Kingman in the performance of its duties.

We cannot conclude under these circumstances that Kingman acted as an agent of Hi-Plains. There is no evidence that Hi-Plains either exercised or had the right to exercise any direction or control over the actions of Kingman as to the result of the means used in connection with the LAK job. Kingman was an independent contractor who dealt with Hi-Plains with the latter merely a subcontractor.

True further challenges the trial court's finding that Hi-Plains was engaged in an interstate transaction in this state and in holding that it had standing to maintain its counterclaim in the instant action, notwithstanding its failure to comply with § 17–36.-95, W.S.1957, C.1965.[4] Appellant-True relies upon this Court's adoption of his theory of a joint adventure or agency relationship as the link in establishing his claim that Hi-Plains, an interstate seller, actually engaged in an intrastate transaction by having its agent, Kingman, simultaneously contracting to and actually repairing and remodeling the feed mill with the equipment Hi-Plains had sold. The argument continues that the construction and repair work performed by Kingman converted the contract for an interstate sale of goods into one for construction in this state, and thus giving the entire transaction a predominantly

---

4. Section 17–36.95 provides:

"No foreign corporation shall have the right to transact business in this state until it shall have procured a certificate of authority so to do from the secretary of state. No foreign corporation shall be entitled to procure a certificate of authority under this act [§§ 17–36.1 to 17–36.126] to transact in this state any business which a corporation organized under this act is not permitted to transact. A foreign corporation shall not be denied a certificate of authority by reason of the fact that the laws of the state or country under which corporation is organized governing its organization and internal affairs differ from the laws of this state, and nothing in this act contained shall be construed to authorize this state to regulate the organization or internal affairs of such corporation."

intrastate character, citing the test set forth in *Creamery Package Mfg. Co. v. Cheyenne Ice Cream Co.,* 1940, 55 Wyo. 277, 100 P.2d 116.[5] Our rejection of True's claims of joint adventure and agency spells doom for that theory.

Nevertheless, we still must consider whether Hi-Plains had capacity to maintain its counterclaim in this case. Section 5, Article X, of the Wyoming Constitution, provides that no corporation organized under the laws of this state or any other jurisdiction shall be permitted to transact business in this state until it has accepted the Constitution of this State and filed such acceptance in accordance with the laws thereof. Section 17–36.95 denies a foreign corporation the right to transact business in Wyoming until it procures a certificate of authority from the secretary of state authorizing it to do so.[6] The consequences to a foreign corporation transacting business without a certificate of authority are delineated in § 17–36.113, W.S.1957, C.1965. That section provides in pertinent part:

"No foreign corporation transacting business in this state without a certificate of authority shall be permitted to *maintain any action, suit or proceeding in any court of this state, until such corporation shall have obtained a certificate of authority.*

\* \* \* \* \* \*

"The failure of a foreign corporation to obtain a certificate of authority to transact business in this state shall not impair the validity of any contract or act of such corporation, and shall not prevent such corporation from defending any action, suit or proceeding in any court of this state." (Emphasis added.)

■ The Wyoming Business Corporation Act is based on the Model Business Corpo-

ration Act, and this section is identical in substance to § 124 of the Model Act. See Rudolph, "The New Wyoming Business Corporation Act", 15 Wyo.L.J. 185 (1961). The phrase "any action, suit or proceeding" applies to the counterclaim of Hi-Plains in this case. A counterclaim, inasmuch as it asks for affirmative relief, assumes the same status of an original complaint. Does that mean that an action based thereon cannot be maintained by a foreign corporation without a certificate of authority under § 17–36.113? True contends that Hi-Plains was engaged in intrastate activities in this state. The issue involves a mixed question of law and fact which must be determined in the light of facts of each case. *Marcus v. J. R. Watkins Company,* 1966, 279 Ala. 584, 188 So.2d 543; *Hattiesburg Manufacturing Co. v. Pepe,* La.App.1962, 140 So.2d 449; *Materials Research Corporation v. Metron, Inc.,* 1973, 64 N.J. 74, 312 A.2d 147.

The test regarding the sufficiency of the local activities of foreign corporations for jurisdictional purposes[7] is not a proper guide for determining what intrastate activities result in such a corporation "transacting business" with respect to requiring the procurement of a certificate of authority. Both raise constitutional questions, but the statute requiring a foreign corporation to qualify to transact business involves the interstate commerce clause while statutes governing jurisdiction over a foreign corporation involve the due process clause. *Long Manufacturing Company, Inc. v. Wright-Way Farm Service, Inc.,* 1974, 391 Mich. 82, 214 N.W.2d 816; *Tauza v. Susquehanna Coal Co.,* 1917, 220 N.Y. 259, 115 N.E. 915. These two concepts serve basically different purposes and must be viewed as separate and distinct.

---

**5.** True claims the construction and repair work were dominant but that depends on Kingman being either a co-adventurer or agent. The test of *Creamery Package,* referred to, is that a transaction is interstate if the dominant characteristics of the transaction overshadow the intrastate features. With Kingman not connected, no intrastate characteristics are noticeable.

**6.** Section 17–36.99, W.S.1957, C.1965, in addition requires the application for a certificate of authority to set forth the foreign corporation's acceptance of the Constitution of this State.

**7.** See *Cozzens v. Piper Aircraft Corp.,* Wyo. 1973, 514 P.2d 1375; *Ford Motor Company v. Arguello,* Wyo.1963, 382 P.2d 886.

Sections 17–36.95 and 17–36.113 prohibit an unqualified foreign corporation from transacting business in this state. While there may be some difference of opinion as to whether "to transact business" is distinctive from "doing business", in any event, the determination of the issue lies not on the quantum but rather on the quality and nature of the corporation's activities. 17 Fletcher Cyclopedia of the Law of Corporations, (Perm.Ed.), § 8466, states at p. 508:

"It is not every act or transaction of a foreign corporation in the state that will bring it within the operation of laws imposing conditions on its right to do business in the state. The thing done must be of a character indicative of an intention on the part of the corporation to carry on its business in the state. There is implied in the term 'doing business' a continuity of act and purpose * * *. The general view seems to be that a foreign corporation is doing business in a state only when it transacts therein some substantial portion of its ordinary corporate business. * * * " (Footnotes omitted.)

Appellant adduces facts from the record that tend to indicate that Hi-Plains, prior to phasing out its construction operation in early 1973, had contacts with this state of a localized nature. Even assuming arguendo that Hi-Plains had engaged in intrastate transactions on these previous occasions, the evidence does not establish a connection with the transaction under consideration sufficient to constitute transacting business within the meaning of §§ 17–36.95 and 17–36.113. *Hattiesburg Manufacturing Co. v. Pepe,* supra; *Richmond Screw Anchor Co. v. E. W. Minter Co.,* 1927, 156 Tenn. 19, 300 S.W. 574. When Hi-Plains went out of the construction business, its primary business operation consisted of selling elevator machinery and equipment out of its headquarters in Salina, Kansas. It thereafter performed no construction contracts in this state. 36 Am.Jur.2d, Foreign Corporations, § 298, states at p. 299:

"[T]here is authority that where the statutes do not render contracts of a noncomplying corporation void, a foreign corpo-

ration, when it ceases to do business in the state, is no longer under the bar of the statute. Its violation of the law having ceased, it has the same rights as a litigant as any other foreign corporation which is not attempting to carry on its business in the state and may sue on contracts which it has made in the state without complying with the statutes."

■ There are some exceptions where foreign corporations may transact business locally without fulfilling qualification requirements. The most common is the long-settled rule that the State may not require such a corporation to comply with its qualification statute if, as a result, it would cast an undue burden on interstate commerce. See e. g., *Eli Lilly and Company v. Sav-on-Drugs,* 1961, 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288, reh. den. 366 U.S. 978, 81 S.Ct. 1913, 6 L.Ed.2d 1268; *Dahnke-Walker Milling Co. v. Bondurant,* 1921, 257 U.S. 282, 42 S.Ct. 106, 66 L.Ed. 239. In *State v. Byles,* 1913, 22 Wyo. 136, 136 P. 114, a nonresident was conducting business in this state which involved the solicitation of orders for vehicles manufactured in Iowa and later required shipment from that state. This court held that under those circumstances, the nonresident was engaged in interstate commerce.

We find particularly useful in our analysis of this case the following quoted material taken from 17 Fletcher Cyclopedia of the Law of Corporations (Perm. Ed.), § 8409, at p. 291:

"The mere negotiations of sales of goods which require transportation from outside the state constitute interstate commerce, and hence state statutes as to admission of foreign corporations do not apply to the acts of agents of a foreign corporation in soliciting, receiving and transmitting orders for such goods. It is immaterial whether the orders are taken by residents or nonresidents, or from consumers or dealers. * * * " (Footnotes omitted.)

■ Hi-Plains was not required to qualify in Wyoming before it negotiated an in-

terstate sale with Kingman even though the president of the former came into this state in connection with the sale. Hi-Plains' Wyoming operations have long since been limited to the solicitation of orders by its salesmen. It does not have an office or inventory in Wyoming. Hi-Plains' only involvement with the contract to repair the feed mill was to suggest to True the name of a contractor who could perform the work. This was done at True's behest and does not serve as a basis for subjecting Hi-Plains to local qualification requirements. *Long Manufacturing Company v. Wright-Way Farm Service, Inc.*, supra, 214 N.W.2d at 822.

We cannot conclude that the trial court was clearly erroneous in finding that Hi-Plains could maintain its counterclaim in this case. A finding to the contrary would have resulted in the improper denial of a forum to a corporate claimant seeking to enforce obligations arising under a contract which involves an interstate transaction. *Booth v. Magee Carpet Company*, Wyo. 1976, 548 P.2d 1252, 1256, citing *Allenburg Cotton Co., Inc. v. Pittman*, 1974, 419 U.S. 20, 95 S.Ct. 260, 267, 42 L.Ed.2d 195.

Appellant's next contention challenges the propriety of the trial court in striking his demand for a jury trial. True maintains he was entitled to a jury trial as a matter of right since both he and Hi-Plains sought money judgments against Kingman, and Hi-Plains could only lawfully receive a personal judgment against him. In that connection, True also claims that he was not properly notified of the hearing on the motion to strike.

True filed a demand for a jury trial in his reply to the counterclaim of Hi-Plains. A pretrial conference order, entered on March 12, 1976, set the case for trial on April 19, 1976, and gave the parties until April 9, 1976, in which to prepare jury instructions, verdicts and special interrogatories to the jury. After True's complaint and amended complaint were dismissed on March 22, 1976, the primary nature of the proceeding became that of a lien foreclosure action.

Counsel for Hi-Plains subsequently discovered in preparing jury instructions that lien foreclosure actions were considered equitable in nature, and that the parties were not entitled to a trial by jury. Hi-Plains then filed a motion to strike the jury demand along with notice of hearing on April 13, 1976. The motion was argued at the April 16, 1976, hearing set for True's motion for summary judgment and was granted by the trial court.

Rule 6(d), W.R.C.P., requires that a written motion and notice of the hearing thereof must be served on opposing parties not later than five days before the time specified for hearing unless a different period is fixed by order of the court. Hi-Plains concedes that the five-day notice period was not met, and that no order shortening such period was entered.

 The federal court interpretations of a similar provision found in Rule 6(d), F.R. C.P., generally have not construed its requirements as being engraved in granite. Notice of less than five days has been permitted in most cases when it is desirable to do so, and sufficient time exists for all parties to prepare for the hearing on the motion without prejudice. 4 Wright & Miller, Federal Practice and Procedure: Civil, § 1169, pp. 643–644. Where the record shows that the aggrieved party had actual notice and time to prepare and meet the questions raised by the motion of an adversary, Rule 6(d) need not be strictly applied. *Gladstone Hotel, Inc. v. Smith*, Wyo.1971, 487 P.2d 329, 331, note 2, citing *Herron v. Herron*, 5 Cir.1958, 255 F.2d 589, 593.

 The record of the hearing on the motion shows that counsel for True acknowledged actual notice was given four days prior to the hearing, even though it was filed three days prior thereto. A hard and fast reading of Rule 6(d) is not called for in this case, especially since the trial judge noted that Rule 39(a)(2), W.R.C.P., also permits the striking of jury demand on its own initiative if it finds that the issue is not triable by jury. The record, therefore, does not support a finding of unfair surprise to the detriment of appellant.

Rule 38(a), W.R.C.P., provides that issues of fact which arise in actions for "recovery of money *only,* or specific real or personal property, * * *" (Emphasis added) shall be tried by jury as a matter of right. The adoption of this rule, however, does not alter the long-established precept that cases purely equitable in character are triable by the court, subject to its power to order any issues to be tried by the jury. *Hein v. Lee,* Wyo.1976, 549 P.2d 286, 290.

All issues for which a jury trial has been demanded in accordance with Rule 38 must be tried by the jury. Rule 39(a), W.R.C.P. This rule is subject to two qualifications, the most significant of which is found under Rule 39(a)(2):

> "[T]he court upon motion or of its own initiative finds that a right of trial by jury of some or all of the issues does not exist, * * *."

The court, therefore, acting either upon motion of one of the parties or upon its own initiative, may order a case transferred from the jury calendar to the court calendar or may limit the issues to be tried by the jury if it finds no jury trial right exists as to some or all of the issues. 9 Wright & Miller, Federal Practice and Procedure: Civil, § 2332, p. 109.

True's argument, in essence, is that since a significant portion of the relief sought was for money judgments, the trial court did not have a proper basis for striking his jury demand. The money judgments entered in favor of True and Hi-Plains were the result of actions authorized by Wyoming mechanic's lien law. After True filed his reply to the counterclaim of Hi-Plains, he filed a third-party complaint against Kingman, requesting joinder of the defendant as an additional party pursuant to the provisions of § 29-17, W.S.1957, C.1967.[8] That section provides in cases where a lien is filed by a person other than a contractor, the contractor has a duty to defend the action at his own expense. It further entitles the owner of the property to file suit for recovery of any sums paid by the owner for which the contractor was liable to the lien claimant.

The third-party complaint of Hi-Plains was for the amount owing for materials supplied to Kingman for the latter's use as contractor on the LAK project. Kingman was served by publication under Rule 4(e), W.R.C.P., but did enter a personal appearance in the action. As indicated below, § 29-22, W.S.1957, requires a personal judgment against the debtor in lien foreclosure actions when the debtor has either been personally served with summons or appears in the action, without service of summons.

Contrary to True's contention, § 29-22 authorizes a personal judgment in favor of the lien claimant only against the debtor on the primary obligation. When the lien is claimed by the subcontractor for labor or materials supplied to the contractor, and no privity of contract exists between the subcontractor and the owner of the property charged with the lien, the lien claimant in such cases is not entitled to a personal judgment against the owner. *Peters v. Dona,* 1936, 49 Wyo. 306, 54 P.2d 817, 826. Since no privity of contract existed between Hi-Plains and True in this case, § 29-22 does not authorize the entry of a personal judgment against the latter. The only remedy available to Hi-Plains, therefore, is foreclosure of the lien on the property of True charged with the lien. See 57 C.J.S. Mechanics' Liens § 331, pp. 1015–1018.

8. Section 29–17 reads as follows:

 "In cases where a lien shall be filed under the provisions of this act [§§ 29-3 to 29-26], by any person other than a contractor, it shall be the duty of the contractor to defend any action brought thereon at his own expense, and during the pendency of such action the owner or agent may withhold from the contractor the amount of money for which said lien shall be filed, and in case of judgment being rendered against the owner or his property upon the lien, he shall be entitled to deduct from any amount due by him to the contractor the amount of such judgment and costs, and if he shall have settled in full with the contractor he shall be entitled to recover back from the contractor any amount so paid by the owner for which the contractor was originally liable."

▌▌ Even though our mechanic's lien statutes authorize, as in this case, the entry of personal judgments against the contractor-debtor under §§ 29–17 and 29–22, a lien foreclosure action, resulting in such judgments, cannot be considered an action "for the recovery of money only, or specific real or personal property," within the meaning of Rule 38(a). An action for foreclosure of a mechanic's lien is an equitable proceeding, and, as contemplated by the rule, should be triable by the court without a jury. *Lasich v. Wimpenney,* 1955, 73 Wyo. 345, 278 P.2d 807. It is principally an action to bind the property of the owner whose premises have been improved by the labor or materials furnished by the lien claimant for that purpose. *Peters v. Dona,* supra, 54 P.2d at 822. In *Mawson-Peterson Lumber Company v. Sprinkle,* 1943, 59 Wyo. 334, 140 P.2d 588, 591, 147 A.L.R. 1089, this court cited with approval the following passage taken from *Holland v. Cunliff,* 1902, 96 Mo.App. 67, 69 S.W. 737, 739, which summarized the purpose of proceedings to foreclose a mechanic's lien under similar statutes:

"'* * * The Missouri statute regulating the proceedings to complete a mechanic's lien do not inflexibly demand a perfect personal judgment against the primary debtor, as is manifest from the fact that as against him a mere publication will suffice in a proper case. [Mo.R.S.A. § 3559]. * * * That fact stamps the procedure as one which may be aimed, if necessary, directly at the realty as the subject of suit. * * * The liability of the debtor may be enforced when it is proper. The fixing of a lien, however, upon the property is one of the prime objects which the statute has in view, and is not diverted from by reason either of the insolvency or of the absence of the chief debtor. * * * *'"

Thus, notwithstanding the provision for personal actions in a proceeding to enforce the lien under our statutes, the proceeding, insofar as it is directed primarily to charging a particular parcel of property with the lien, is in rem. 57 C.J.S. Mechanics' Liens §§ 265, p. 873 and 328, p. 1013.

*Lasich v. Wimpenney,* supra, involved a proceeding initially instituted as a result of nine actions for foreclosure of liens filed against the owner and contractor and sale of the owner's property. While the trial court denied the contractor's request for a jury trial of the consolidated actions as untimely, this court also noted that the case, as finally developed, appeared as one for foreclosure of certain mechanic's liens and for an accounting between the owner and the contractor. In reaching the conclusion that the contractor was not entitled to a jury trial on the issues, this court gave approval to the so-called "clean-up doctrine" of equity practice to lien foreclosure actions, quoting from *Kinney-Coastal Oil Company v. Kieffer,* 1927, 277 U.S. 488, 48 S.Ct. 580, 584, 72 L.Ed. 961, 967:

"'It is a general rule that a court of equity in a suit of which it has and takes cognizance, may administer complete relief between the parties, even though this involves the determination of legal rights which otherwise would not be within the range of its authority.'"

▌▌ The entry of personal judgments, pursuant to requirements of our mechanic's lien statutes, does not vitiate the equitable nature of such proceedings. The trial court did not commit error striking True's jury trial demand.

▌▌ True's final claim is that the judgment entered against him is void for want of compliance with the mechanic's lien statutes. The claim is based upon the argument that the statutes require a personal judgment against him before an in rem judgment of foreclosure can be valid. We find merit in this contention, although not on the grounds espoused by True.

We should preliminarily surmise that our mechanic's lien finds its roots in the statutes of Missouri. *Sargent v. Delgado,* Wyo. 1972, 492 P.2d 193; *Lasich v. Wimpenney,* supra. Thus, in the interpretation of our lien laws on the question, the decisions of the Missouri courts will be given weight. *Arch Sellery, Inc. v. Simpson,* Wyo.1959, 346 P.2d 1068, 1070, note 4.

Although *Becker v. Hopper,* 1913, 22 Wyo. 237, 138 P. 179, Ann.Cas.1916D 1041, aff. on reh. 23 Wyo. 209, 147 P. 1085, Ann. Cas.1918B 35, dealt with the issue of necessary parties to mechanic's lien foreclosure actions, it is instructive to this case. This court held there that Comp.Stat.1910, § 3806, now § 29–18, W.S.1957, C.1967, in contradiction to its Missouri counterpart, does not require the contractor as a necessary and indispensable party to such an action unless he is made a party. In construing Comp.Stat.1910, § 3816, now § 29–17, W.S.1957, C.1967, on rehearing, this court made the following pertinent observation:

"The provisions of this section were evidently incorporated in the statute for the owner's protection, and to accomplish the full purpose thereof the owner has a clear right to insist that the contractor be made a party, if possible, so that he may be bound by the judgment. While no personal judgment can be rendered against the contractor in such a suit unless there has been service of summons upon him within the state, he may nevertheless, if a nonresident of the state, be brought in as a party; for the statute has provided for constructive service in such a case. Section 3806. And by section 3809 [now § 29–21, W.S.1957] [9] it is provided that, if the debtor has not been personally served with process according to law, but has been lawfully notified by publication, the judgment, if for the plaintiff, shall be that he recover the amount of the indebtedness found to be due and the costs of suit, to be levied out of the property charged with the lien. We have no doubt, therefore, that the contractor ought to be made a party, and is a necessary party, to the suit, in the sense that the owner may require that he be made a party, or by proper and timely objection may defeat the action for a failure to make him a party. But such failure to make the contractor a party may be waived by the owner; for he is not, in our opinion, an indispensable party to the rendition of a valid judgment establishing and foreclosing the lien." 147 P. at 1087–1088. (Bracketed matter supplied.)

It is clear that the form of judgment prescribed by § 29–21, W.S.1957, C.1967, allowing for recovery to be levied out of the property with the lien, should not have been followed in this case. True chose to protect himself by requiring Kingman to be made a party under § 29–17, while Hi-Plains also sued Kingman seeking recovery for the amount owing on the subcontract to supply materials. Kingman personally appeared in the action. The trial court, therefore, should have followed the form of judgment under § 29–22:

"When the debtor has been served with summons, or appears at the action without service of summons, the judgment, if for the plaintiff, shall be against such debtor, as in ordinary cases, with the addition that if no sufficient property of the debtor can be found to satisfy such judgment and costs of suit, then the residue thereof to be levied as provided in the next preceding section [§ 29–21]."

This court has previously construed the predecessor to this section as referring to cases wherein the debtor and the owner of the property are not the same parties. *Mawson-Peterson Lumber Company v. Sprinkle,* supra, 140 P.2d at 591, citing *Hill v. Chowning,* 1902, 93 Mo.App. 620, 67 S.W. 750, 751.

*Farley Bros. v. Cammann,* 1891, 43 Mo. App. 168, 175, held that the form of judgment authorized by the Missouri statutory counterpart to § 29–22, provides for two executions. The lien claimant is entitled to a personal execution against the original debtor only, and, if no sufficient property of the debtor can be found to satisfy the

---

**9.** Section 29–21 provides:

"When the debtor has not been personally served with process according to law, but has been lawfully notified by publication, the judgment, if for the plaintiff, shall be that he recover the amount of the indebtedness found to be due and the cost of suit, to be levied out of the property charged with the lien therefor, which said property shall be correctly described in said judgment."

judgment, then he is entitled to have execution against the property charged with the lien. Section 29–24 requires that execution must comply with the terms of the judgment which must, in substance, conform with the requirements of the statute. *Lowry-Miller Lumber Co. v. Dean,* 1932, 226 Mo.App. 783, 47 S.W.2d 164, 166.

The judgment entered by the trial court does not conform with the dictates of § 29–22, and is erroneous in that regard. It, therefore, must be modified insofar as it is rendered against True, but remanded with directions to modify the judgment in conformity with the tenor of this opinion.